## T. W. ROGERS, Appellant, v. F. C. FRENCH.

**Sales: AGENCY: EVIDENCE.** In an action for damages based on an
1   alleged contract for the purchase of ice, the evidence is con-
sidered and held to constitute authority to sell, rather than a
contract of sale.

**Contract: PAYMENT: ACCEPTANCE.** Where a proposition for the
2   sale of property does not fix the time of payment, it will be
presumed that payment is to be made in cash on delivery; and
a conditional acceptance as to payment will not effect a contract.

**Purchase by Agent From Principal: GOOD FAITH.** Where an agent
3   in the purchase of the subject-matter of the agency conceals
from his principal facts relating to the value of the property,
the contract is void.

*Appeal from Humboldt District Court.*—HON. A. D.
BAILIE, Judge.

WEDNESDAY, OCTOBER 14, 1903.

ACTION to recover damages for refusal to deliver a
certain lot of ice under a contract for the sale thereof.
On motion the court directed a verdict for defendant, and
rendered judgment thereon against the plaintiff for costs.
Plaintiff appeals.—*Affirmed.*

*Prouty, Coyle & Prouty* for appellant.

*Healy Bros. & Kelleher* and *P. Finch* for appellee.

McCLAIN, J.—The action is on an alleged contract for
the sale of certain ice stored in defendant's icehouse at
Dakota City. At the time of the making of the contract
of sale, if one was made, plaintiff resided at Humbolt,
which adjoins Dakota City, and defendant at Evans, Min-
nesota, and plaintiff sought to make out the alleged con-

tract by letters and telegrams which passed between the parties. One contention of defendant, in his motion to direct a verdict, was that it appeared from the letters and telegrams on which plaintiff relied that the plaintiff was acting in the transaction as the agent of the defendant to effect a sale of the ice, and not as a proposed purchaser, in his own right, and the action of the court in sustaining the motion may have been based on this ground. It is necessary, therefore, to set out briefly the communications which passed between the parties so far as they throw light on this question. Two letters from defendant to plaintiff with reference to a possible sale of the ice, written in July, 1901, are in evidence, one of which apparently refers to plaintiff as negotiating for the purchase of the ice; but, as they were written in response to letters which were not introduced in evidence, they do not throw much light on the question as to the relations between the parties. But on the 4th of August following, plaintiff wrote to defendant a letter in which he said: "If you can afford to make a price of $1 per ton, in ten ton lots, or larger, and $1.25 in smaller lots than ten tons, I will do my best to sell it for you. Will have ice weighed on wagon scales, and send you the tickets;" to which letter defendant replied on the 10th of the same month: "Until further notice you may sell ice at the prices mentioned in your letter;" and plaintiff responded: "I will do my best with the ice. Weather very cool here now. Don't know how much difference it will make. Please advise me where I can get key, and order holder to deliver it to me. Also I must have a few days' notice, if you change your mind, so I can fill any orders on hand." Thereupon defendant gave to plaintiff a written order for access to the icehouse, "in case you secure any orders for ice." It seems to us unquestionable that at this stage of the negotiations it was clearly understood between plaintiff and defendant that plaintiff was

**1. AGENCY: evidence.**

to sell the ice for defendant, if he could, at the price named, and that any sales he should make would be sales as the agent of defendant, and not on his own account. In other words, while it is argued, and not without plausibility, that the plaintiff was negotiating for the purchase of such quantities of ice as he might be able to resell on his own account and profit, and on such terms as he should see fit, nevertheless we think the trial court was justified in the interpretation of this correspondence as showing an agency, and not an offer of sale. The subsequent negotiations between the parties must be interpreted in the light of the situation thus revealed. On the 20th of the same month plaintiff telegraphed defendant: "Have offer for all; quick acceptance; net you 75c ton; shall I accept? Answer quick;" to which defendant responded on the same date by telegram: "Other negotiations pending; $1 net is the limit." But on the 24th defendant wrote plaintiff a letter, which was received by the latter on the morning of the 25th, which was Sunday, as follows: "I have been unable to close sale I had pending, and will accept your offer of 75c per ton net, in case you are in a position to make the sale at this date. In case offer is still open, wire me at once your acceptance, that I may call off other negotiations." And immediately on the receipt of this letter plaintiff replied by telegram: "Will take the ice; commence loading Monday; will weigh and settle promptly." It appears that on Saturday, after defendant had written the letter above referred to, he wrote another letter, withdrawing his proposition, which, as the evidence tends to show, did not reach the plaintiff until Monday evening, and that defendant consistently refused from that time on to consider that there was any offer outstanding which plaintiff could accept. It appears also that plaintiff on Monday, before receiving defendant's letter canceling the offer, sent defendant two other telegrams, indicating that he claimed to have become the

owner of the ice, and to be entitled to take possession of it, these telegrams being occasioned by the fact that the person who had charge of the icehouse for defendant refused to allow plaintiff to take the ice. The question is argued whether the transaction amounted to a Sunday contract in such sense as to be illegal, the position of appellant being that although the acceptance on Sunday did not in itself make a valid contract, yet that an acceptance on Monday was in time, and that by indicating to defendant by telegram, before defendant's withdrawal of the offer had been received, that plaintiff still insisted upon his formal acceptance indicated on Sunday, the contract of sale became complete and binding. We do not discuss this question, for the reason that we regard the offer made by defendant to plaintiff on Saturday to be merely an acceptance of the proposition by plaintiff to sell the ice on the terms specified, as defendant's agent, and therefore the acceptance by plaintiff as a purchaser in his own right would not be responsive to the offer, and would not constitute a contract.

A further consideration occurs to us as being important. The offer made by defendant to plaintiff on Saturday, and received by plaintiff on Sunday morning, did *2. CONTRACT: payment: acceptance.* not specify time of payment, and therefore it would be presumed that payment was to be in cash on delivery. Plaintiff's acceptance, however, was not of such a contract, but his proposition was to "weigh and settle promptly." Therefore, even though the offer was of a sale, and not of authority to sell, there was not such acceptance as to constitute a binding contract.

Further, if it should be contended that plaintiff's telegram of August 20th was an offer to purchase, and not to act as agent, still the sale to plaintiff was not valid, assuming that the relation between the parties *3. PURCHASE by agent from principal; good faith.* prior to that time had been that of principal and agent, for the reason that plaintiff, as

agent, was concealing from the principal, the defendant, material facts, to wit, that the price of ice at Humboldt and Dakota City was rapidly advancing by reason of continued hot weather and diminished ice supply. As a matter of fact, plaintiff, when he made the proposition to defendant with reference to the sale by defendant of his ice at seventy five cents per ton, had already a proposition for the purchase thereof from a proposed customer at twice that price, and on Monday the current price was still higher. While it is true that one who has been acting for another as agent for the sale of property may himself become a purchaser, it is also elementary that he must, in doing so, act in good faith, and advise his principal fairly and fully with reference to all matters affecting the value of the property.

The view we take as to the proper interpretation of the correspondence as bearing on the question whether or not plaintiff was the agent of defendant for the sale of this ice, makes it unnecessary to consider any other question. The judgment of the lower court is AFFIRMED.