F. F. NICOLLS, Appellant, v. H. A. WETMORE et al., Appellees.

CONTRACTS: Requisites and Validity—Mutuality. No mutuality,
1 no consideration. No consideration, no contract. In other words, there is no contract unless each party is able to hold the other to some positive agreement. *Held,* a purported contract for the sale of automobiles was subject to so many exceptions and contingencies on behalf of the party agreeing to sell as to deprive his promise of any practical enforceable quality, and that a deposit made thereunder must be returned to the owner.

CONTRACTS: Construction—Practical Construction of Parties. The
2 practical construction which the parties have placed on their contract is persuasive with the court.

CONTRACTS: Performance—Return of Guarantee Deposit—Burden
3 of Proof. He who holds a deposit as a guaranty for the performance of a contract has the burden of proof, after the expiration of the contract, to allege and prove some valid defense justifying the retention of the deposit.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

SATURDAY, FEBRUARY 12, 1916.

THE opinion states the case. *Affirmed* on defendant's appeal. *Reversed* on plaintiff's appeal.

*Charles S. Macomber,* for appellant.

*Henderson & Fribourg,* for appellees.

WEAVER, J.—On or about November 18, 1911, plaintiff and defendants had certain negotiations concerning the sale of Hudson automobiles, for which the defendants held an agency. The details of the oral negotiations are the subject of dispute, but it is agreed that, on the date named, they executed a certain written or printed instrument. Whether this instrument constituted a complete contract by which alone the rights of the parties herein are to be determined

is also a subject of controversy. In this instrument, the defendants are mentioned as "the Dealer", and plaintiff as "the Subdealer". The portions thereof which are here material are as follows:

"1. The Dealer agrees to sell to the Subdealer, f. o. b. cars, at Detroit, Mich., sight draft against bill of lading, with exchange, unless paid for in advance by certified checks or currency, Hudson automobiles described in manufacturers' catalogue, . . . for distribution within the following described territory: [Describing it.]

"5. Each automobile will be sold by the Dealer to the Subdealer at a discount of 15 per cent from the manufacturers' current advertised list price and will be resold by the Subdealer at the manufacturers' advertised list price only, nor shall the Subdealer, by rebates, allowances, donations, or any other means, evade the spirit of this clause.

. . .

"10. The Subdealer agrees to deposit with the Dealer the sum of $150.00 as a guarantee for the satisfactory performance of this agreement, said deposit to be returned to him with interest at the rate of 5 per cent per annum, upon the termination of this agreement, provided in case the Subdealer shall make default in any performance hereof, the Dealer may retain as much of said sum as shall be deemed reasonable indemnity for any loss or damages sustained.

"11. The Dealer also reserves the right to apply all or any part of the deposit money to offset parts, accounts, or transportation charges on parts or cars, or any or all other expenses incurred in the adjustment of claims or settlements.

"12. Subject to the conditions hereinbefore and hereinafter stated, the Subdealer hereby agrees to buy and the Dealer hereby agrees to sell to the Subdealer, f. o. b. Detroit, Mich., five new Hudson motor cars.

"13. The Subdealer agrees to accept delivery of cars according to the attached schedule, and to furnish detailed

specifications for same. If the Subdealer fails to furnish the Dealer with detail specifications 30 days before the 1st of the month, during which shipment is to be made, the Dealer reserves the right at his option to deduct such cars from the total allotment and to dispose of them as he sees fit.

"14. The Subdealer agrees hereby to maintain at all times at least one Hudson car for demonstrating purposes and to maintain a suitable salesroom and efficient shop for the care of Hudson cars at Pierson, Iowa.

"15. This agreement is contingent upon delays due to strikes, floods, accidents, or any other cause beyond the control of the manufacturers, whether occurring in the plant of the manufacturers, or in that of any concern from which the manufacturers purchase parts of their motor cars, and the shipments of Hudson cars above purchased are to be made as herein specified, subject to the prior orders of other dealers and as the business of the manufacturers will permit.

"16. It is mutually understood that this contract shall be terminated by limitations on July 1, 1912. It is further understood that this contract supersedes all previous agreements between the contracting parties."

After the time limit mentioned in the contract had expired, plaintiff began this action at law to recover the sum of $150, which he alleges he deposited with defendants, who, upon due demand therefor, refuse to return it. As grounds for such recovery, he alleges that, upon solicitation by the defendants, he orally undertook to solicit orders for or make sales of Hudson cars for them in the territory described; that, under said agreement, he was not required or expected to purchase or to receive cars, except as might be necessary to complete sales to purchasers obtained by him. He further says that, such agreement having been made, defendants requested him to sign their printed form of contract and, upon his objection that he had not assumed any absolute obligation to purchase machines, the defendants explained and

pointed out to him that the paper fixed no time in which the cars were to be called for or delivered, and that he was bound thereby only to receive and pay for cars as he might need them from time to time, to fill the orders secured by him; and upon this understanding that the agreement to receive machines was to become effective and of binding force only when he should have obtained orders or made sales in his territory and needed the cars to complete the deals so negotiated, he signed the paper as requested, and deposited with defendants the sum of $150. He further alleges that he did faithfully canvass his territory and made all reasonable efforts to sell Hudson cars therein, but without avail, and for that reason, he did not order any cars and the defendants never sold or delivered any to him, and he is, therefore, in no manner indebted to the defendants upon the contract or on account of their said transactions. The agreement having expired according to its express limitation, he therefore demands the return of his deposit. The defendants admit the execution of the written contract and the deposit with them of $150, but allege that plaintiff, having failed to perform the agreement on his part, is not entitled to a return of his deposit. By way of counterclaim, defendants further allege that, under said agreement, plaintiff undertook to purchase from them 5 Hudson cars, upon each of which they would have realized a profit of $80, and that, by reason of his failure to complete said purchase, they have been damaged in the sum of $400, and they therefore ask judgment against him for the difference between said sum of $400 and the plaintiff's deposit of $150, now in their hands.

Jury having been waived, the cause was tried to the court, which, upon consideration of all the evidence, dismissed both plaintiff's claim and defendants' counterclaim. Both parties have appealed, but plaintiff's appeal being first perfected, he alone will be designated appellant.

The written contract is upon its face incomplete. It will be seen that Section 1 thereof is simply a general promise to

sell Hudson cars to the subdealer for a specified purpose,
without stating the number of cars, price or
time of delivery. In Section 5 is a clause
which governs the price at which sales will be
made, but neither the number of cars nor the
time of delivery is provided for. Sections 12 and 13 do state
the number of cars under consideration by the parties, but
plaintiff's agreement to accept and pay for the cars is re-
stricted to the specifications in an "attached schedule", and,
as we have seen, no such schedule appears ever to have been
made or attached to the writing. Again, even if the schedule
had been agreed upon and attached to the writing, Section 15
appears to make performance of such agreement on the part
of the defendants subject to so many exceptions and contin-
gencies as to deprive their promise of any practical enforce-
able quality. The same contract was recently considered by
the South Dakota court upon issues practically identical with
those in the present case, and it was there held that the agree-
ment was manifestly incomplete and that the dealer could not
rightfully retain the deposit made by the subdealer or set
off against a demand for its return the anticipated profits
which would have been made had the proposed sales to the
subdealer been in fact effected. The court speaks of the
alleged contract as a "jug-handled" affair, by which, even
if it had been complete, there was no mutuality of enforceable
obligation. *Hessenius v. Wetmore*, (S. D.) 153 N. W. 937. By
Section 3 of the instrument, defendants reserved the absolute
right to cancel the same if at any time, in their judgment,
plaintiff was not properly promoting the sale of their cars;
but no corresponding right was reserved to the plaintiff; and
while, by Section 13, they seek to bind the plaintiff to an abso-
lute duty of receiving and paying for a given number of cars,
they provide practical immunity for themselves against liabil-
ity for failure to deliver on demand. That contracts of this
nature are clearly lacking in mutuality has been held in *Velie
v. Kopmeier*, 114 C. C. A. 284; *Oakland v. Indiana Auto. Co.*,

**1. CONTRACTS:**
**requisites**
**and validity:**
**mutuality.**

121 C. C. A. 319; and *Goodyear v. Koehler*, 143 N. Y. Supp. 1046.

It is to be observed, also, that the deposit in this case was made under an express agreement that it should be returned subject only to the defendant's right to apply the same, so far as might be necessary, to the payment of any debt or damages properly due them from plaintiff. By their answer and counterclaim, also, they concede that the deposit belongs to the plaintiff unless they establish their right to apply the same upon this claim for alleged loss of profits upon the five cars mentioned in the writing. Finding, as we do, that there was no valid or enforceable contract by the plaintiff to purchase said cars, it follows that defendants have no right of recovery upon their counterclaim; and, upon their own showing, plaintiff is entitled to recover the amount of his deposit, with interest.

There is a further consideration tending to the same result. There is neither plea nor proof that defendants ever tendered or offered a delivery of the cars which they claim to have sold. On the contrary, their conduct throughout the time covered by the alleged contract is entirely consistent with plaintiff's theory that such contract was construed by them as requiring plaintiff to take and pay for such cars only as might be needed to fill orders obtained by him, and wholly inconsistent with the thought that they expected or required him to accept or pay for cars upon any other condition.

2. CONTRACTS: construction: practical construction of parties.

It is still further to be noted that, the deposit being admitted and the term of the alleged contract having expired, the burden was upon defendants to allege and prove some valid defense or counterclaim by reason of which they were relieved of their promise to return it.

3. CONTRACTS: performance: return of guarantee deposit: burden of proof.

We think the trial court erred in dismissing the plaintiff's claim. There was no

error in dismissing the counterclaim.   For the reasons stated, the judgment below is affirmed upon defendants' appeal and reversed upon plaintiff's appeal.   The cause will be remanded for further proceedings in harmony with this opinion.— *Affirmed* on defendants' appeal.   *Reversed* on plaintiff's appeal.

EVANS, C. J., DEEMER and PRESTON, JJ., concur.