NATIONAL PRODUCE COMPANY, Appellant, v. DYE YAUS COM-
PANY, Appellee.

**SALES:   Requisites and Validity of Contract—Offer and Acceptance.
1   An "acceptance" of an "offer" to sell must conform to the offer
*without any deviation or condition whatever,* or no contract will result.**

**APPEAL AND ERROR:   Reversal—New Trial—Jury Question Under
2   Incompetent Evidence.   The appellate court will not grant a new
trial because appellant's testimony (received in the trial court
without objection) creates a jury question, when such testimony
is manifestly incompetent, and would be excluded if objected to
on a retrial.**

Headnote 1:   13 C. J. pp. 279, 281.   Headnote 2:   4 C. J. p. 679.

*Appeal from Polk District Court.*—G. D. THOMPSON, Judge.

JANUARY 20, 1925.

ACTION at law, to recover damages for breach of an alleged
contract to sell and deliver personal property, in that the de-
fendant, as seller, failed to deliver. The answer was a general
denial. At the close of the plaintiff's evidence, the trial court
sustained the defendant's motion for a directed verdict. Plain-
tiff appealed.—*Affirmed.*

*Brockett & Strauss,* for appellant.

*Maxwell & Ryan,* for appellee.

EVANS, J.—The plaintiff's petition predicated a contract
of sale of personal property upon certain telegrams and letters
passing between the parties, and as supplemented by certain
oral conversations. The allegation is that the
contract was partly oral and partly in writing.
On March 6, 1919, the defendant sent to the
plaintiff the following letter, known in the
record as Exhibit A:

1. SALES: requi-
sites and valid-
ity of contract:
offer and ac-
ceptance.

"We offer five cars of April eggs storage packed, in new cases, Jensen Pack, contract and all papers to be signed between the ultimate purchaser and the Jensen Creamery Company; five cars at thirty-seven and one-half cents, net, delivered Chicago, any time in April.  Tried to get Mr. Brown late this afternoon on the telephone at the Montrose but was informed he was not registered there, so left a call for him.  Mr. Brown called late this afternoon and when he arrives in Chicago, he can tell you more about the deal."

. The answer to the foregoing was a telephone conversation, containing a counter offer from the plaintiff to the defendant to buy at $37\frac{1}{4}$ cents per dozen, the purchase to be, not from Jensen, but from the defendant.  The oral answer to this counter offer was that the defendant would see Jensen, and would write to plaintiff later.  This was on March 7th.  On the same day, the defendant wired plaintiff the following, known as Exhibit B.

"Jensen will accept thirty-seven cents on five cars sell at thirty-seven and one half work quick."

. On the same day, the defendant wrote to plaintiff the following letter, known in the record as Exhibit D.

"We confirm wire to you today, which read as follows: 'Jensen will accept thirty-seven cents on five cars sell at thirty-seven and one-half work quick.'  We are asking you to sell at thirty-seven and one-half cents, with the idea that we will split the one-half, if this is not satisfactory let us know at once, as we cannot afford to get this business for nothing."

In answer to Exhibit B, the plaintiff sent the following, known in the record as Exhibit C.

"Answering accept five cars storage packed Aprils from you at thirty-seven quarter confirm."

On the same date, plaintiff wrote to the defendant the following letter, known in the record as Exhibit E.

"We received your wire stating that 'Jensen will accept 37 cents on 5 cars sell at thirty-seven and one-half.  Work quick.'  We immediately wired you 'Accept the 5 cars' at $37\frac{1}{4}$c net to us, delivered Chicago; these cars to grade Storage-packed First, delivered any time in April.  So be sure and get your confirmation from Jensen and send us your confirmation so

that we will have no mix-up. We have these sold as to be Iowa Storage Packed Aprils. The writer will be in Milwaukee tomorrow attending the convention there and will let you know if anything can be learned from there.''

If there was a contract entered into between these parties, it must be found from the foregoing communications.

It will be noted therefrom that the defendant made two successive offers. No response was made by plaintiff to the first offer, except a phone conversation, whereby plaintiff offered 37¼ cents for the eggs, but declined to buy them from Jensen.

The defendant's second offer (Exhibit B) purported on its face to be made on behalf of Jensen. This was confirmed by letter, with further explanation. The only interest which the defendant purported to have in the subject-matter of the sale was as agent, and it claimed a ''split'' in the margin. By this second offer, the defendant did not recede from the conditions stated in the first offer: that the contract should be with the Jensen Creamery Company. Plaintiff's answer (Exhibit C) was not an unequivocal acceptance. It attached the condition ''*from you.*'' This was simply a counter offer that the plaintiff would buy the eggs from the defendant, and not from Jensen. The last word in this telegram was, ''confirm.'' The effect of this direction was that it suspended the offered obligation of the plaintiff until confirmation should be had. Plaintiff itself was not bound by it until such confirmation.

The plaintiff followed this telegram with the letter Exhibit E. By this letter the plaintiff required the defendant to become purchaser from Jensen, and seller to plaintiff. With the receipt of Exhibits C and E, the defendant dropped the transaction, and proceeded no further. It made no response or confirmation to either one. We deem it clear that no contract was consummated. To constitute a contract by an offer and an acceptance, the acceptance must conform strictly to the offer, in all its conditions, without any deviation or condition whatever. If there be any qualification attached which calls for a further understanding or correspondence, in order to determine the final meeting point of the minds of the parties, the acceptance fails to close the contract. *Foshier v. Fetzer,* 154 Iowa 147; *Knox v. McMurray,* 159 Iowa 171; *Batie v. Allison,* 77

Iowa 313; *Jameson v. Joint Drainage District*, 191 Iowa 920; *Rogers v. French*, 122 Iowa 18.

The argument of appellant is directed largely to the proposition that, because the alleged contract was partly oral and partly in writing, a jury question was necessarily presented by the oral evidence, even though only a question of law was presented by the written evidence.

Of course, if the oral evidence presented a disputed fact, such dispute, if material, would present a jury question. But it would still remain a question of law, for the court, whether the oral evidence, in its most favorable aspect, disclosed the consummation of a contract. There is no dispute in the evidence in this record. The motion of the defendant was made at the close of plaintiff's evidence. The oral evidence introduced lends explanation to the terms of the written communications, and discloses the circumstances under which they were made. There is nothing in such evidence upon which a consummation of a contract could be predicated. If there had been, plaintiff would still have to rely upon the written communications, as the only form of contract which could escape the inhibition of the statute of frauds. The learned counsel for the plaintiff recognize this limitation, but they urge upon our attention that the question of the statute of frauds was in no manner raised in the court below. Upon this record, there was no real occasion for raising it. If there had been, the failure of opposing counsel could afford no affirmative aid to the appellant here, to obtain a reversal and remand for a new trial. If the plaintiff had won a judgment below through the failure of opposing counsel to make objections, he could, as *appellee,* avail himself of such failure in support of the judgment here. Such right is not available to him as *appellant,* seeking a new trial. Improper evidence which could be excluded upon proper objection in a new trial will not be considered by us as ground for *granting* a new trial. If it could be said, therefore, in this case, that the jury could have found the consummation of the contract from the oral evidence, such oral evidence would be inadmissible, for that very reason, under the statute of frauds, and could be excluded, upon proper objection, on that ground, in the event of a new trial. We have

2. APPEAL AND ERROR: reversal: new trial: jury question under incompetent evidence.

no occasion, therefore, to consider whether the oral conversations, all of which antedated the writings, carry any implications either of an existing or a proposed consummated contract.

The order of the district court directing the verdict is approved, and the judgment is affirmed.—*Affirmed.*

Faville, C. J., and Stevens, De Graff, and Vermilion, JJ., concur.