DES MOINES MARBLE & MANTEL COMPANY, Appellant, v. GRACE SEEVERS, Appellee.

**APPEAL AND ERROR:** Assignment of Errors—Absence of Exceptions. An assignment of error in a law action is futile when the record reveals no exception to the ruling to which objection is made. (See Book of Anno., Vol. 1, Sec. 11536.)

**SALES:** Requisites of Contract—Nonmeeting of Minds. There can be no sale or contract of sale so long as the parties do not definitely agree upon the subject-matter nor upon the terms of the contract. (See Book of Anno., Vol. 1, Sec. 9930, Anno. 5.)

Headnote 1: 4 C. J. p. 80. Headnote 2: 35 Cyc. p. 55.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 16, 1926.

ACTION for damages for refusal to accept a monument. Verdict and judgment for defendant. Plaintiff appeals.—*Affirmed.*

*W. L. Ryan,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

MORLING, J.—The errors assigned are principally to instructions given. There is also, in connection with these, the

very general assignment of error in refusing to permit plaintiff to show all the elements of damage. There is also an assignment of error in overruling motion for judgment notwithstanding the verdict and in arrest of judgment. The exceptions to the instructions were taken after the verdict, and in the motion for new trial and in arrest and for judgment notwithstanding the verdict. This motion was overruled; and judgment entered. The abstract shows no exception. The ruling of the court upon the exceptions to instructions and on the motions is, therefore, not reviewable. *Gibson v. Adams Exp. Co.,* 187 Iowa 1259; *Anthony v. O'Brien,* 188 Iowa 802; *Lutz v. Davis,* 195 Iowa 1049. The rulings on the admissibility of evidence are not argued in such a way as to enable the court to understand wherein plaintiff contends them to be erroneous, or the reasons thereof. We have been unable to discover error in these rulings.

1. APPEAL AND ERROR: assignment of errors: absence of exceptions.

Moreover, we think that there was no prejudicial error in any of the rulings of the court, for the reason that no contractual relations between the plaintiff and defendant have been shown to exist. The suit is brought upon a written order reading:

2. SALES: requisites of contract: nonmeeting of minds.

"Please deliver and erect on my lot at Forest Oskaloosa Cemetery during spring 1923 or as soon thereafter as convenient, one monument, design No. print 1908; Height 4-0 blue white granite of the following sizes and description: Cap. 'Thos. H. Seevers,' on both faces of Die. Die 4-4x1-1½x3-0 all pol. Base 5-9x2-5x1-0 Rock pitch marg. tep. 3 markers No. 3000-size 1-8x0-10x0-8. With the following lettering: Thos. H. Seevers, 1848-1921. Father Isaac N. Seevers. Mother, Ruth Seevers.

"Purchaser to inspect stone in Des Moines when notified by Co., subj. to change in design, finish or material to any selection desired. Style of lettering to be determined on inspection.

"I promise to pay said Des Moines Marble & Mantel Co., or order at its office in Des Moines, Iowa, on the delivery of said work on the lot the sum of thirteen hundred dollars, with interest thereon at 8 per cent per annum from delivery, time of payment to be made on inspection.

"I also agree that I will not countermand this order and

that the ownership of the above described property shall remain in the Des Moines Marble & Mantel Co., until fully paid for * * * This order is not to constitute a binding contract until approved by the Des Moines Marble & Mantel Company, in writing, at Des Moines, Iowa. Suit may be brought hereon at Des Moines, Iowa."

The Des Moines Marble & Mantel Company is the name under which J. R. Golden does business. The order appears to have been signed by him. He was not present when it was taken. It was taken by Swift, an agent. The plaintiff wrote defendant, acknowledging receipt of the order; also inclosing copy for inscription, which defendant was asked to examine, correct, and return. The letter stated:

"As soon as we have the monument for your inspection, we will notify you, that you may come in and see it, before the lettering is done."

Defendant had her attorney immediately answer, returning the instrument, with the statement, in substance, that she had made no contract. A few days later, plaintiff wrote defendant:

"We are pleased to advise you that we now have the monument for which you gave our Mr. Swift a conditional order, on the floor ready for your inspection. * * * if it does not please you, we will change to any other selection that you wish to make from our stock. We may have something else in our $100,000 stock if this does not. If we do not have one in our stock on hand, we will make up a special design for you."

Plaintiff also wrote to defendant's attorney, sending copies of the order, and stating:

"We have the monument which she thinks she would like, from our salesman's description, now on the floor, and we would be pleased to have her come in and see it at her earliest convenience.

"If she does not like it, we will change it to any other selection she may wish to make from our stock * * * or we will make her up a special design * * *"

Golden testified that the term "a conditional order" in his letter had reference to conditions under which he permitted customers to inspect and make changes. He says:

"I did not consider I was bound by this price if she selected another monument. It would carry out the contract if she took any stone, whether it was $400 or a $3,000 one. The cheapest I have is $25. My profit would be the same percentage on a $25 stone. * * * Under this contract, there might have been a profit of 40 per cent on $25, or somewhere around $10, if she had come in and considered that way of doing."

Swift testified:

"I told her, as I would tell anyone that I sold to, that she could have the privilege of changing from this job to anything else she saw fit, from $25 up to $3,500. It was up to her to be pleased. * * * I wasn't going to bind her to take a one thousand or two or five thousand or five hundred. The understanding was, I sold her this job; but if she didn't like it when she saw it, she had these privileges."

With respect to the provision in the order for payment on delivery, Swift testified:

"I changed that to 'time of payment to be made on inspection.' * * * At the time of delivery, she could set the time of making her payments—on what basis. * * * At that time, we did not agree on the type of lettering, because I wanted her to be pleased with it. * * * That was to be settled when she came to Des Moines, and her position, whether she would pay interest on it or pay the money at once. I left all that to her. * * * I wanted her to be sure of what we were talking about, so to be satisfactory to her, that she should see the monument and know, because I knew what it would look like, and wanted her to know."

This evidence was introduced in the making of plaintiff's main case.

The defendant testified:

"I told him I didn't care to purchase one; because I did expect to get something, but I wasn't in position to buy one and pay for it. * * * Just before he left, he took his book out, and said, 'I want you to come up to Des Moines and visit Mr. Golden's place where he has all these monuments on display.' He asked which kind of granite I preferred of the samples * * * when I chose the one I liked the best, and he made me the price on it. * * * before he left, he took out this little pamphlet and

had me sign it, and I signed it. He said he wanted me to sign this because it would tell Mr. Golden, when I came to Des Moines, exactly what kind of monument I wanted to look at and figure on with him. That was the only object in signing it. I said, 'All right, no harm in that.' Never dreamed I was signing a contract. I didn't read it over. He didn't read it to me or offer to. I didn't have my glasses there * * * Nothing was said at that time with regard to paying for a stone. * * * I wasn't posted enough to pay any attention then *· * * I said I wouldn't think of deciding on anything till I went and saw it and picked it out * * * I thought the only purpose of this paper was to show Mr. Golden what kind of a stone I thought I wanted, so I didn't read it over. * * * I could have gotten my glasses if I had thought I was signing a contract. * * * If it had been an important paper, I would have read every word of it. * * * I did not at any time indicate that I intended buying a monument from Mr. Swift.''

On rebuttal, Swift testified:

''I talked to her that that [additional marker] would be in addition to the monument and one marker. It was understood that, if I put those two markers in, I might consider that job hers, subject to change on inspection in Des Moines if she was not satisfied. * * * It was as plain a case as I ever sold in my life, that she bought the monument with the understanding, if she wasn't satisfied when she saw it on the floor, she could change it to some other style, finish, or material. * * * I went through this instrument in detail with Mrs. Seevers. I am not sure I did or didn't read it to her.''

The plaintiff, in making his case, went into the question of the actual transaction. The parol evidence was taken largely without objection. The case was tried on the theory that the rights of the parties were to be determined by the actual transaction. Neither side claims anything under the Uniform Sales Act. It is incontestable, we think, that neither party understood that the defendant should be bound to take this particular monument, but that she could take any "job" that she might see fit, from $25 up. The lettering was not settled upon; the time of making payments was left open. If defendant had selected a $25 monument, she would, upon the plaintiff's theory,

have complied with her so-called contract. The plaintiff's complaint really resolves itself into defendant's refusal to inspect plaintiff's stock and to make an inspection and selection or give an order for a special job. We think it clear that the parties did not definitely agree upon the subject-matter of the sale, nor upon the terms; that the transaction rose no higher than preliminary negotiations, looking toward the purchase of a monument in the future. There was no meeting of the minds of the parties. *Goodenow v. Barnes,* 40 Iowa 561; *Jobst-Bethard Co. v. Glenwood Canning Co.,* 129 Iowa 117; *Nicolls v. Wetmore,* 174 Iowa 132; *National Produce Co. v. Dye Yaus Co.,* 199 Iowa 286; Benjamin on Sales (3d Am. Ed.), Section 39 and notes; *Coad v. Rogers,* 115 Iowa 478; *Breen v. Mayne,* 141 Iowa 399; *Stennett v. First Nat. Bank,* 112 Iowa 273; *Rogers v. French,* 122 Iowa 18; *American Agricultural Chem. Co. v. Kennedy & Crawford,* 103 Va. 171 (48 S. E. 868); 1 Elliott on Contracts, Section 26; *McIntyre Lbr. & Export Co. v. Jackson Lbr. Co.,* 165 Ala. 268 (51 So. 767); 13 Corpus Juris 290.

The plaintiff was not entitled to recover, and all rulings complained of were without prejudice.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.