614

ANTONIO RODRÍGUEZ MONTALVO, peticionario, *v.* LA CORTE DE DISTRITO DE MAYAGÜEZ, HON. JOSÉ A. NEGRÓN LÓPEZ, JUEZ SUSTITUTO, demandada.

Núm. 34.—*Sometido:* Diciembre 3, 1945. *Resuelto:* Febrero 5, 1946.

*Pedro Santana, Jr.,* y *Martín Avilés Bracero,* abogados del Departamento del Trabajo y del peticionario; *J. Alemañy Sosa,* abogado del interventor, demandado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda radicada ante la Corte Municipal de San Germán, el aquí peticionario alegó que estuvo empleado en la vaquería de Migual Carlo Pabón, como ordeñador, desde el 24 de mayo de 1943 hasta el 21 de octubre de 1944, por el sueldo convenido de $6 por semana; que el contrato entre él y su patrono no tenía tiempo fijo o determinado de duración; y que en octubre 21 de 1944, no obstante haber cumplido el demandante con todas las obligaciones de su empleo, el demandado, sin justa causa o motivo justificado, le despidió de su trabajo, sin antes hacerle efectiva la mesada a que el demandante alega tener derecho, de conformidad con lo dispuesto en la Ley núm. 84 de mayo 12 de 1943 (pág. 197).

Negó el demandado que el demandante trabajara a *sueldo* de $6 semanales y alegó en contrario que el demandante trabajaba *a jornal* o *salario diario,* cobrando por los días que trabajaba, razón por la cual no le son aplicables las disposiciones de la citada Ley núm. 84 de 1943.

Fallado el caso en contra del demandado, apeló éste para ante la Corte de Distrito de Mayagüez. Las partes sometieron el caso mediante una estipulación de los siguientes hechos: (1) Que el demandante trabajaba por día, por salario o jornal de un dólar ($1) diario y cobraba por semana de acuerdo con los días que hubiere trabajado; y (2) que fué despedido del empleo, según se alega en la demanda, sin justa causa.

La corte de distrito dictó sentencia declarando sin lugar la demanda. El demandante acudió a esta Corte en solicitud de un auto de *certiorari,* el cual expedimos por entender que se trata de un caso comprendido dentro de las disposiciones de la Ley núm. 32 de mayo 3 de 1943 (pág. 85).

La Ley núm. 43, aprobada el 28 de abril de 1930 (pág. 357) disponía en su sección 1 lo siguiente:

"Todo *empleado* de industria o de cualquier otro negocio lucrativo, contratado sin tiempo determinado, cuyo *sueldo* fuese convenido por mes, quincena o semana, que fuere destituído de su *cargo* sin justa causa y sin previo aviso de por lo menos quince días de anticipación, tendrá derecho a recibir de su principal o patrono *el sueldo que hubiere devengado* y. el de un mes, una quincena o una semana adicional, según fuere el caso; Disponiéndose, que las disposiciones de esta Ley no serán aplicables a los mancebos ni factores de comercio, para los cuales regirá lo dispuesto en el Código de Comercio." (Bastardillas nuestras.)

En mayo 12 de 1943, la legislatura aprobó la Ley núm. 84 (Suplemento, Comp. 1941, página 100) por la cual se enmendó la sección 1 arriba transcrita, para que se lea como sigue:

"Sección 1.—Todo *empleado* de industria o de cualquier otro negocio lucrativo, contratado sin tiempo determinado, que fuere despedido de su *cargo* sin justa causa, tendrá derecho o recibir de su patrono, en adición al *sueldo* que hubiere devengado, el sueldo correspondiente a un mes por concepto de indemnización; Disponiéndose, que las disposiciones de esta Ley no serán aplicables a los mancebos ni factores de comercio, para los cuales regirá lo dispuesto en el Código de Comercio." (Bastardillas nuestras.)

Comparando los textos de una y otra sección, encontramos lo siguiente: Bajo la Ley núm. 43 de 1930, el *empleado* que había sido contratado para trabajar, sin que en el contrato do servicios se fijara un término para la duración del mismo, en caso de ser despedido de su *cargo* sin justa causa, tenía el derecho de reclamar de su principal o patrono el pago de (*a*) el *sueldo* que hubiere devengado en la fecha en que fuere despedido y (*b*) el *sueldo* correspondiente a un mes, a una quincena o una semana, según se hubiera convenido que el sueldo sería pagado por meses, por quincenas o por semanas.

De acuerdo con la Ley enmendatoria, Ley núm. 84 de 1943, el *empleado* por tiempo indeterminado, a quien se despide de su *cargo* sin justa causa, tiene derecho a recibir de

su patrono, además de lo que éste le estuviere adeudando por los servicios ya prestados, "el sueldo correspondiente a un mes por concepto de indemnización", no importa la forma de pago que se hubiere convenido.

Los requisitos esenciales para tener derecho a la indemnización provista por la sección 1, en su forma original, supra, son: (a) haber estado empleado sin contrato por un tiempo determinado, en una industria que continúa sus operaciones o negocios; y (b) haber sido despedido sin justa causa. La sección 1 en su forma original exigía un requisito adicional. Solamente tenía derecho a reclamar el empleado de industria, cuando de acuerdo con su contrato el sueldo le era pagado por semanas o por quincenas o por meses. Es, pues, evidente, que de acuerdo con dicha sección original el empleado que trabajaba a base de un jornal o salario determinado por cada día de trabajo, no tenía derecho a indemnización cuando era despedido de su cargo o empleo sin justa causa.

En la sección 1 de la Ley núm. 43 de 1930, tal y como quedó enmendada por la Ley núm. 84 de 12 de mayo de 1943, supra, el legislador eliminó el requisito en cuanto a los pagos semanales, quincenales o por mensualidades. De acuerdo con dicha sección, el reclamante tendrá derecho a la indemnización si prueba a satisfacción del Tribunal que fué empleado, sin tiempo determinado, para trabajar en una industria o negocio lucrativo; que fué despedido de su empleo sin justa causa, y que la industria o negocio continúa sus operaciones.

No existe controversia alguna en cuanto al hecho de que en la fecha en que fué despedido del trabajo, sin justa causa, el peticionario estaba trabajando, como ordeñador, en una vaquería, que como industria o negocio lucrativo explotaba el demandado y aquí interventor Miguel Carlo Pabón. Tampoco la hay en cuanto a que el peticionario trabajó para dicho patrono por un largo período de tiempo, desde mayo 24 de

1943 hastá octubre 21 de 1944—fecha en que fué despedido —o sea durante un período de casi diecisiete meses consecutivos; que en el contrato no se fijó término alguno para su duración; y que el peticionario recibía $1 por cada día de trabajo, haciéndosele los pagos semanalmente, de acuerdo con el número de días trabajados durante la semana.

Si el legislador hubiese tenido el cuidado de expresar en lenguaje claro y conciso el propósito fundamental de la enmienda que estamos discutiendo, el caso ante nos no ofrecería dificultad alguna para su resolución.

Arguye el patrono interventor—y así lo resolvió la corte inferior—que apareciendo que el peticionario trabajaba en concepto de *obrero,* en su *ocupación* como ordeñador, y por un *salario* o *jornal* de $1 diario, su reclamación no está amparada por la Ley núm. 84 de 1943, pues ésta es aplicable solamente a *empleados* que desempeñen un *cargo* o posición á *sueldo.*

Las cuestiones que debemos considerar y resolver son: (*a*) si un ordeñador de una vaquería es un ''empleado'' de una industria o negocio lucrativo, a quien el legislador tuvo en mente al redactar la Ley núm. 84 de 1943; y (*b*) si al aprobar la Ley de 1930 y la enmienda de 1943, concediendo indemnización a ''todo *empleado* de industria o de cualquier negocio lucrativo'' que fuere destituído sin justa causa, el legislador usó la palabra ''empleado'' en un sentido limitado o restrictivo, para incluir solamente al empleado industrial ''que desempeña un cargo técnico o burocrático''; o si la intención legislativa fué hacer extensiva la protección del estatuto a todas aquellas personas que presten servicios a una industria o negocio lucrativo, no importa la clase de trabajo a que se dediquen o la forma en que se les pague la remuneración, siempre que se trate de un empleo regular y continuo y no de un servicio casual, incidental u ocasional o que deba ser prestado dentro de un período de tiempo determinado.

Aceptamos como correcta la regla que sostiene que el método más seguro para la interpretación de la palabra "employee" (empleado), usada en esta clase de estatutos, es el de "tomar en consideración la causa para la aprobación de la ley, en cuanto pueda ser conocida, y el mal que se trata de remediar por medio del estatuto". *Empey* v. *Yost,* 44 P.2d 774, 775, 182 Wash. 17; *Meek* v. *Julian,* Ind. App. 32 N. E.2d 737, 739; *Dept. of Industrial Relations* v. *Drummond,* Ala. App., 1 So.2d 395, 401.

Durante los últimos treinta o más años, la tendencia de la legislación de carácter social aprobada por la Asamblea Legislativa de esta Isla, ha sido la de levantar y dignificar el trabajo y dar mayor protección al hombre que para poder sostenerse a sí mismo y a su familia se ve obligado a trabajar para otro a cambio de un sueldo, salario o jornal o como quiera llamársele al precio o remuneración que recibe por su trabajo. Con ese fin fueron aprobadas las leyes proveyendo para el pago de compensaciones a obreros por accidentes del trabajo; fijando los salarios mínimos; limitando el número de horas del día de trabajo; y numerosas otras leyes que tienden a proteger la vida del obrero y a darle mayor seguridad contra accidentes del trabajo. Nada o muy poco se había hecho, hasta la aprobación del estatuto que estamos interpretando, para garantizar al obrero la seguridad y permanencia de su empleo o para protegerle en caso de que fuere despedido sin justa causa, asegurándole el recibo de su salario, el pan de su familia, durante un período de tiempo razonable, hasta poder obtener un nuevo empleo.

Nos resistimos a presumir y mucho más a creer y resolver que la intención legislativa fuera conceder la protección y garantía del estatuto a los empleados técnicos y burocráticos de las industrias, o sea a los que reciben los mayores sueldos, y negárselas al obrero que recibe un jornal, que trabaja en los campos y en las factorías y máquinas de la

620

industria y que a diario arriesga la salud y la vida para que la industria viva y rinda beneficios. No podemos creer que el legislador haya tenido la intención de dejar sin protección al empleado que después de servir al patrono durante un período de tiempo substancial, en un empleo de carácter continuo y permanente, es despedido sin justa causa, mientras la industria continúa sus operaciones. Opinamos que al usar la frase "todo empleado de industria o de cualquier otro negocio lucrativo", el legislador tuvo en mente no solamente a los empleados técnicos o burocráticos de la industria, si que también a todos los obreros empleados en las industrias, contratados sin tiempo determinado, y no dedicados a trabajos casuales, incidentales u ocasionales.

Tampoco nos convence la argumentación del interventor al efecto de que el estatuto es aplicable solamente a los empleados que son despedidos de un *cargo,* o sea "de una ocupación fija de alguna importancia que entraña dignidad, empleo u oficio, de acuerdo con la definición del diccionario de la Real Academia Española"; y que no siendo el trabajo de ordeñar vacas un *cargo,* el peticionario en este caso no tiene derecho a la indemnización que reclama.

Por las mismas razones antes expuestas, opinamos que el legislador no tuvo la intención, al usar la palabra "cargo", de limitar los efectos de la ley a aquellos empleados de la industria que ocupan puestos o empleos de carácter técnico o burocrático. Es cierto que de acuerdo con el diccionario de la Real Academia Española la palabra "cargo" se emplea para expresar una ocupación importante y de cierta dignidad; pero no es menos cierto que de acuerdo con el lenguaje familiar y corriente de nuestro pueblo, la palabra "cargo" se usa frecuentemente como sinónimo de "empleo", "ocupación" y "oficio". ¿Por qué hemos de presumir que el legislador usó dicha palabra en su sentido estricto y gramatical, para limitar el alcance de la ley, y no en 'el sentido

más amplio y liberal, para poner bajo la protección del estatuto a los más necesitados de esa protección?

La última contención del interventor es aún menos meritoria. Insiste en que el estatuto es aplicable solamente a aquellos empleados que reciben un *sueldo;* y que no lo es por tanto al peticionario, quien recibía un jornal por cada día de trabajo.

He aquí un nuevo conflicto entre el lenguaje del diccionario y el lenguaje que el pueblo usa corrientemente. Las palabras "sueldo", "salario" y "jornal" se emplean para expresar una misma cosa—el estipendio que se paga al que trabaja como remuneración por sus servicios. "Sueldo" y "salario" se usan indistintamente para expresar los pagos semanales, quincenales o mensuales que se hacen a los trabajadores y empleados. "Sueldo", "salario" y "jornal", se usan también, indistintamente, para expresar el estipendio que recibe el trabajador por un día entero de trabajo; y así vemos que el legislador aprueba una Ley Creando la Junta de Salario Mínimo y no la Junta de Jornales Mínimos. No habiendo el legislador insertado en la ley una definición del término "sueldo", ¿por qué hemos de suponer que dicho término fué usado en su sentido estricto, para significar única y exclusivamente el estipendio que se paga al trabajador por semanas, por quincenas o por meses? ¿Por qué no hemos de creer—especialmente si tenemos en cuenta que en el estatuto enmendado se eliminó todo lo referente a pagos semanales, quincenales o mensuales—que cuando el legislador dijo que el trabajador "tendrá derecho a recibir de su patrono, en adición al *sueldo* que hubiere devengado, el *sueldo* correspondiente a un mes", el término "sueldo" fué usado para expresar lo que el obrero recibe por un mes de labor, sin tener en cuenta si el pago se le hacía por días, por semanas o por meses? Una interpretación restrictiva nos conduciría a situaciones absurdas. Por ejemplo: el obrero que recibe $1 diario, que trabaja treinta días al mes

y por tanto tiene un ingreso de $30 mensuales, no tendría derecho a la indemnización. En cambio, el obrero que de acuerdo con su contrato recibe $15 por cada quincena e ingresa por lo tanto $30 cada mes, tendría la protección del estatuto al ser despedido sin justa causa. No podemos aceptar que ésa haya sido la intención del legislador.

Opinamos que de acuerdo con los hechos y circunstancias del presente caso, el peticionario tiene derecho a la indemnización que reclama. *La corte inferior erró al desestimar la demanda y procede, por tanto, anular la sentencia recurrida y devolver el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Córdova no intervino.