MARJORIE L. YERGEY, Appellant, v. MONTGOMERY WARD & COMPANY, Appellee.

No. 47144.

(Reported in 30 N. W. 2d 153)

DECEMBER 16, 1947.

REHEARING DENIED FEBRUARY 13, 1948.

Edward L. McCarthy, of Sioux City, for appellant.

Stilwill, Brackney, Stilwill & Wilson, of Sioux City, for appellee.

SMITH, J.—The issue here is simple. Defendant relies solely upon the contention that claimant's husband was an independent contractor and not an employee. The deputy industrial commissioner, as sole arbitrator, denied the claim. The Industrial Commissioner on petition for review reversed the arbitration decision and allowed the claim. On appeal the district court in turn reversed the commissioner's ruling. This was in effect a holding that there was not sufficient competent evidence in the record to support the commissioner's decision. Sections 86.29 and 86.30(4), Iowa Code, 1946. The claimant appeals.

There is no factual contradiction between witnesses. Claimant's husband entered into some relationship with defendant on or about June 23, 1945, and was killed September 28, 1945, while engaged in performing the duties incident to whatever the arrangement was between them. No one was present when the contract was made except decedent and R. F. Hanner, defendant's retail store manager in Sioux City.

Defendant had embarked on a spray-painting program in that territory. It had entered into an oral agreement with the Mid-West Spray Painting & Decorating Company of Omaha, Nebraska, to do the work of spraying. Defendant was to furnish and be paid for the paint and the Mid-West Company was to be paid for the labor. Defendant undertook to furnish representatives to generate orders for the other company and make estimates of both paint and labor but received no compensation for that except the profit on sale of paint. Its representatives also estimated in advance the amount of paint that would be required and entered the orders therefor in sales books furnished by defendant.

Defendant advertised this program in the newspapers and

the manager of the Farmers Elevator at Vermillion, South Dakota, seeing the ad, filled out and sent in to defendant the coupon asking that a representative be sent to make arrangements for painting. After some delay and telephoning, the decedent, representing the defendant, appeared and said he had been sent to take measurements of the building. He went alone up in the elevator hoist or lift. In a few minutes it was discovered he had fallen from the building. He died almost instantly. There may be some significance in the fact that later another representative of defendant went to Vermillion to complete the unfinished job of estimating and salesmanship.

I. Our only concern is to determine whether there is sufficient competent evidence in the record to support a finding that Yergey was an employee. Our function is not to determine the weight of the evidence. American Bridge Co. v. Funk, 187 Iowa 397, 401, 173 N. W. 119. The case was not triable de novo on appeal from the commissioner's award. Brown v. Rath Packing Co., 219 Iowa 9, 257 N. W. 411.

The undisputed facts we have already detailed make it certain that some relationship between decedent and defendant was established the latter part of June 1945. The store manager, Hanner, was defendant's only witness. On direct examination he testified that it was arranged between him and Yergey that the latter "would contact people or develop leads or would be given leads through me as store manager, and at that time could contact these people at his own volition at such times as he deemed advisable, and in event that he was successful in consummating a deal or transaction he would give us a list of the materials that he had sold to this customer"; that he was furnished a sales book and was to bring orders into the store and be given a ten per cent "refund allowance."

The witness explained this last term was not accurate, that it was in fact a "representative discount" but they used a "refund allowance" form as a matter of bookkeeping. He said he used that plan because decedent was not on their pay roll; that decedent did not want to sign a federal withholding tax receipt or have a social security number.

The witness testified further that decedent said he had

been a piano salesman all his life, had an established business, did not know when pianos might become available, and did not want to tie himself down.

The witness also testified that "leads" or possible prospects were turned over to decedent but he was not accountable to defendant if he sold them or not, that he was assigned no particular territory and that a substantial part of the business he turned in was from prospects initiated by himself. The only restriction to territory was that if he sold labor as part of the transaction it would have to be in Mid-West Company territory. He could sell paint to customers who did not have it "spray-painted on." He had no instructions from defendant, no transportation, no expense account, and no particular hours of work—could work as much or as little as he wished. He was free to carry on any other business activity.

Mr. Hanner also testified on direct examination:

"Q. And did you withhold any federal tax in relation to Mr. Yergey regarding withholding tax? A. Not on any paint sales made. Q. And was he carried on your pay roll books at all? A. Not at the time he sold any paint for us."

But on cross-examination it developed that when Mr. Yergey first went to work he *was* entered on defendant's books as an employee for withholding tax, that on June 27th and 29th he made sales totaling $1,443.35 upon which his commission was $144.30, that a social security tax of $1.44 was deducted and he was paid the balance, $142.86; also that he had a social security card as an employee of defendant on a Montgomery Ward form. These facts were revealed by several exhibits with which the witness was confronted, viz., "Salesclerk's Weekly Record of Commissions Earned and Cancelled," "Withholding Receipt," "Social Security Card," and "Withholding Slip."

The witness then explained that although decedent was at first placed on the pay roll as an employee he later objected to the tax deduction and his designation or classification was changed from "outside salesman" to "representative." He insisted that as a "representative" decedent was subject to no direct supervision or direction and that the change in classification was in order to avoid the withholding tax. He admitted

there was no other change in relationship. There is no testimony of any actual change in conduct between the parties. However, though there may have been no direct supervision either before or after the alleged change in relationship, decedent, when given leads, was expected to work on them—"Q. If he didn't work 'on them why you would just sever your connections at least? A. We wouldn't give him additional leads."

The witness pointed out an additional distinction between "outside salesmen" and "representatives":

"An outside salesman is on our pay roll at a stated drawing account and commission. * * * They have to work regular hours, report to their superiors daily, have to maintain certain records which were not required of Mr. Yergey."

However, it seems by that standard defendant had but one "outside salesman" and yet the sales book to be issued by the company to salesmen and representatives apparently indiscriminately contained "Instructions to Sales Clerks." The one issued to Mr. Yergey showed he made thirty-four sales from the time he commenced work to the time of his death, showing a gross of $9,258.74 over the total period of approximately fourteen weeks. There is no evidence he ever worked regular hours or reported daily to his superiors, even before the alleged change in relationship.

Mr. Maberry, who was named by Hanner as the one "outside salesman," testified it was his job to take care of contacts that came into the store. There was found in Mr. Yergey's possession a memorandum in Maberry's handwriting, dated the day before Mr. Yergey's death, referring to the job at Farmers Elevator, Vermillion, South Dakota. Maberry disclaimed knowledge of how it got out of his files and into decedent's possession but the inference is permissible (if not inescapable) that he sent Yergey out on that assignment.

Furthermore, it appears that if decedent did not have a drawing account he did have something quite similar. As late as August 4, 1945, there was issued to him a "Disbursement Voucher" in which under the word "account" was listed "Pay" and under the heading "Reason for Disbursement" was written "Jack Yergey—pay roll advance." The advance was "authorized

by R. F. Hanner" and signed by Yergey. The "total paid" was $40. There were three other such "Disbursement Vouchers" containing the same information except the amounts differed.

Mr. Hanner testified these represented advances which he made to Mr. Yergey but guaranteed personally and eventually made good personally to the amount of $60. We understand from his testimony, however, that the advancements were carried on the company's books and were in fact made from company funds.

II. We are asked on this record to affirm a judgment that there was not sufficient competent evidence to support the commissioner's allowance of the claim. This we cannot do. We understand the rule to be "that where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commissioner are conclusive." Reynolds v. George & Hoyt, 230 Iowa 1267, 1271, 300 N. W. 530, 532.

Had there been no testimony on behalf of defendant the showing made by claimant would have supported a commissioner's award. Decedent appeared in Vermillion in response to an application made by the elevator company to defendant. He undoubtedly represented defendant in some capacity. He carried a sales clerk book dated June 21, 1945, in which he was listed as an outside clerk. It contained instructions to outside salesmen and no rules relating to "representative salesmen." On the back of each sales slip in the book was a printed "Conditional Sale Contract with Montgomery Ward & Co." On each sale made by Yergey the sales slip showed him as "Sales Clerk." He also carried a contract book showing the approximate cost of labor for painting, with duplicate contract forms of the Mid-West Company, with which defendant had the working arrangement already described.

The testimony of defendant's witness, Hanner, could at most create only a conflict in the evidence. Manifestly it could not be accepted as a verity, even if it had been frank and unequivocal.

But it was not entirely straightforward. After the witness had on direct examination definitely testified in effect that

Yergey from the first had never been an employee or carried on the pay-roll books, the witness was compelled on cross-examination to admit quite otherwise as to the first two weeks at least of the relationship.

His explanation of Yergey's subsequent change of status and the reason for it is easily susceptible to the charge that at most it was a change of name only and not of substance, merely made to avoid the withholding and social security tax requirements and not to change the actual conditions of the relationship. As said by Cardozo, C.J., in Glielmi v. Netherland Dairy Co., 254 N. Y. 60, 62, 63, 171 N. E. 906, 907, " * * * the difference is a semblance only, or so the triers of the facts might find."

Even under Hanner's own testimony it might be said of decedent, as Judge Cardozo said of the claimant in the case just cited:

"Much of his apparent freedom is in truth apparent only. * * * If he does anything at variance with the will of his employer, its policy or preference, he knows that his contract of employment may be ended overnight."

Here the witness admits that if the so-called "representative" failed to work on the prospects assigned to him "we wouldn't give him additional leads."

The commissioner was not bound to accept at face value Mr. Hanner's explanation of the theoretical change in Yergey's status, even if not directly denied. We have repeatedly so held as to testimony of claimants. Miller v. Gardner & Lindberg, 190 Iowa 700, 704, 180 N. W. 742; Serrano v. Cudahy Packing Co., 194 Iowa 689, 691, 190 N. W. 132. We see no reason why the rule should not apply as to technically undenied testimony of defendant or its manager after claimant has made a prima facie case. This is true even if we ignore the peculiarities of the testimony for defendant in the instant case.

We think there was sufficient competent evidence to sustain the decision of the commissioner.

III. We are not unmindful of the test pointed out in Pace v. Appanoose County, 184 Iowa 498, 509, 168 N. W. 916, 919, as being the one "oftenest resorted to, in determining whether

one is an employe or an independent contractor," viz., "to ascertain whether the employe represents the master as to the result of the work, or only as to the means." See, also, Arthur v. Marble Rock Consol. Sch. Dist., 209 Iowa 280, 283, 228 N. W. 70, 66 A. L. R. 718. We have no difficulty here in finding sufficient evidence to meet this test.

Nor are we overlooking defendant-appellee's contention that where the testimony is uncontradicted, determination as to the nature of the status is a matter of law. We have already pointed out we think there is here a dispute in the record. Different minds might honestly reach different conclusions, and even from the testimony of defendant's own witness different inferences might be drawn.

The cases cited by defendant-appellee are easily distinguishable. Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254, involved construction of a written contract. In the other two determination of status depended on statutory interpretation. Arthur v. Marble Rock Consol. Sch. Dist., supra; Stufflebean v. City of Fort Dodge, 233 Iowa 438, 9 N. W. 2d 281.

The cases are legion but we do not find it necessary to extend our discussion further. After all, each case must depend on its own facts.

Finding as we do upon the record that there was sufficient competent evidence to support the commissioner's award, it follows that the decision of the trial court holding otherwise must be reversed.—Reversed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.