WOOD TAYLOR, Appellee, v. JOHN HORNING, Appellant.

No. 47424.

(Reported in 38 N. W. 2d 105)

JUNE 14, 1949.

Harold W. Vestermark, of Iowa City, for appellant.

Ries, Dutcher & Osmundson, of Iowa City, for appellee.

GARFIELD, J.—Three special defenses (see section 86.14, Code, 1946) are pleaded in the amended answer of defendant-Horning to claimant-Taylor's petition for arbitration filed with the industrial commissioner: (1) claimant was an independent contractor, not an employee (see Code section 85.61, subsection 3, paragraph c); (2) defendant had no knowledge or notice of claimant's alleged injury within ninety days after its occurrence (see Code section 85.23); and (3) claimant's employment was purely casual and not for the purpose of defendant's trade or business (see Code section 85.61, subsection 3, paragraph a).

After a hearing the deputy industrial commissioner as sole arbitrator sustained the first two of these defenses and accordingly denied compensation. He further held that while the work done by claimant was not for the purpose of defendant's trade or business it was not purely casual. The deputy therefore rejected the third defense.

Following a hearing before the industrial commissioner upon review (see Code section 86.24) at which additional evidence was presented by both parties, the deputy's denial of compensation was affirmed on the grounds (1) claimant was an independent contractor and (2) his employment was purely casual and not for the purpose of defendant's trade or business. The commissioner's decision does not determine whether defendant

had knowledge or notice of claimant's injury within ninety days after its occurrence.

Upon appeal to the district court the commissioner's decision was reversed and compensation awarded claimant on the grounds (1) the facts found by the commissioner do not support his order and (2) there is not sufficient competent evidence in the record to warrant such order (see Code section 86.30). From the judgment of the district court defendant has appealed to us. We are agreed the judgment appealed from cannot be affirmed and the commissioner's denial of compensation must be upheld.

We have frequently called attention to the functions of the industrial commissioner and the court in cases of this character. Where the facts are in dispute or reasonable minds may differ on the inferences fairly to be drawn therefrom the findings of the commissioner, in the absence of fraud, are conclusive. This is true even though the court might have arrived at a different conclusion from the evidence. If under the testimony there is a question which should have been presented to a jury, if trial were before a jury, then the court is bound by the commissioner's finding on such question. Unless it can be said as a matter of law from the record here that claimant was an employee and not an independent contractor at the time of his injury there is no ground for interfering with the commissioner's decision. See Code section 86.29; Reddick v. Grand Union Tea Co., 230 Iowa 108, 114, 296 N. W. 800, 803, and citations; Reynolds v. George & Hoyt, 230 Iowa 1267, 1271, 300 N. W. 530, 532; Yergey v. Montgomery Ward & Co., 239 Iowa 258, 264, 30 N.W. 2d 153, 155.

There is sufficient competent evidence to support the commissioner's decision that claimant was an independent contractor, not an employee of defendant, at the time of his alleged injury (a hernia). It certainly cannot be said as a matter of law there was an employer-employee relationship. The status of claimant involves largely fact questions and not, as in Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254, and some of our other decisions, the construction of a written contract between the parties. (See Yergey v. Montgomery Ward & Co., supra, 239 Iowa 258, 266, 30 N. W. 2d 153, 156.)

Our compensation act provides an independent contractor shall not be deemed an employee. (See Code section 85.61, subsection 3, paragraph c.) Since the act does not define "independent contractor" resort must be had to the common law for its meaning. Mallinger v. Webster City Oil Co., supra, 211 Iowa 847, 850, 234 N. W. 254, and citation; Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm., 230 Iowa 123, 136, 296 N. W. 791, 797; 58 Am. Jur., Workmen's Compensation, section 137; 71 C. J., Workmen's Compensation Acts, section 183, page 449; annotation 134 A. L. R. 1029, 1030.

The term "independent contractor" is defined and explained in Meredith Pub. Co. v. Iowa Employment Sec. Comm., 232 Iowa 666, 672–675, 6 N. W. 2d 6, 10, 11, and authorities cited. See also Mallinger case, supra; Sanford v. Goodridge, 234 Iowa 1036, 1042, 13 N. W. 2d 40, 43; annotations 19 A. L. R. 226, 75 A. L. R. 725. Also annotations 15 A. L. R. 735, 742, 19 A. L. R. 1168. In Sanford v. Goodridge, supra, we say an independent contractor is one who by virtue of his contract possesses independence in the manner and method of performing the work he has contracted to perform.

The authorities agree the principal test of an independent contractor, stated in various ways, is that he has the right to determine for himself the manner in which the specified result shall be accomplished. 32 Iowa L. Rev. 1, 19, and decisions cited. This and other tests are enumerated in the Mallinger case and later decisions which have quoted from it. Such other tests are substantially these: the existence of a contract for a certain piece of work at a fixed price, independent nature of his calling, his right to employ and supervise assistants, his obligation to furnish necessary tools and equipment, the time for which the workman is employed and that the work is not part of the regular business of the employer.

We will refer to some of the testimony which tends to support the conclusion claimant was an independent contractor. Defendant, an auditor employed by the state, purchased a barn on an acreage near Iowa City from one Weidner at a cost of $40. He intended to have the barn torn down and to use the lumber in a home he was about to build for himself in Iowa

City. Claimant had worked as a common laborer for the University of Iowa for about twenty years and then, as he says, "for the last three or four years I have been working for myself, for farmers and help put in their crops, and one thing another, and doing painting, carpenter work and odd jobs."

Through a mutual acquaintance claimant learned defendant was looking for someone to tear down the barn and applied to him for the job. There is ample testimony that after the two men looked over the barn claimant first proposed to tear it down for $200 but they later agreed upon $185 as the price for which claimant should do the work. Defendant paid plaintiff for the completed job a total of $183 in three installments and gave him a chicken "roost" at an agreed price of $2.

It is true claimant maintains he was to be paid a dollar an hour for his work and that defendant paid in all $199 for that many hours of work. However, defendant's version of the testimony in this and some other respects is corroborated in the main by Weidner as well as by other evidence.

When the two men made their agreement defendant told claimant he wanted him to be careful not to break up the lumber taken from the barn. There is substantial evidence defendant did not otherwise attempt to control claimant as to the manner and method of doing the work and that both men contemplated defendant should not have such right of control.

After claimant had worked about three days he hired his friend Popkins, who had worked with claimant on other occasions, to help him tear down the barn. Defendant, corroborated by Weidner, insists he had nothing to do with Popkins' employment. Claimant says he told defendant he needed help and defendant told him to get a man.

Claimant used his own car to go to and from the work and used his own tools and equipment. Claimant and Popkins selected their own hours of work although claimant says they both worked eight hours a day. Claimant did not keep track of their time nor did he furnish defendant a statement of the time they worked. It took about two and one-half weeks to complete the job. During at least half that time defendant was in South Dakota on a vacation.

We set out part of the cross-examination of claimant at the hearing before the deputy commissioner.:

"Q. During the course of this work were you given any instructions as to how it was to be done? A. No. Q. You were just hired to tear down the barn? A. I was just hired to tear down the barn. Q. Did Mr. Horning at any time boss or instruct you as to how the barn was to be torn down? A. No, he just said we was doing fine, that's all. Q. Did he ever boss or instruct your assistant Mr. Popkins how the work was to be done? A. I don't remember him telling him. Q. In other words, you were out there to tear down the barn and use your own methods and means? A. Yes. Q. And did it just as you pleased? A. Yes, he wanted us to be careful of his lumber and not break it up."

At the hearing before the commissioner on review, about three and one-half months after the first hearing, claimant receded from the above testimony but it accords with the evidence of defendant and Weidner and the commissioner was justified in accepting it as true.

Defendant testified in part at the arbitration hearing:

"All I wanted was the barn torn down and the lumber not injured and I never supervised or instructed anyone as to how it was to be done. * * *

"There was no fixed time when this work was to be completed. * * * I had no control over the premises upon which this barn was located. * * * I made no effort to control the progress of the work."

Excerpts from Weidner's testimony at the original hearing are:

"I asked Mr. Taylor about Mr. Popkins and he said, 'That is my man, he works for me.' * * * Mr. Taylor was the boss. * * * He (Taylor) had the full line of tools, axes, ropes, pulleys, crowbars. He said, 'I took a lot of jobs like that, I need all that stuff.' * * * Neither I nor Mr. Horning made no attempt to supervise or control the methods of tearing down this barn."

At the hearing on review before the commissioner Weidner testified:

"He [Horning] introduced me to Taylor and said, 'I made a contract with him to tear down the barn.' * * * Before Mr. Horning went on his vacation, I actually saw him there during the tearing down of the barn only three or four times. * * * He never mentioned anything to Mr. Taylor with reference to giving any instructions or advice as to how to tear down the barn and he never came on to boss the job. * * * Mr. Taylor always told me he paid Popkins and hired him."

Other testimony in support of the commissioner's decision need not be set out. Nor is it necessary to review evidence for claimant in conflict with the above. As previously intimated, the controversy involves for the most part merely a dispute of facts between claimant and Popkins on the one side and defendant and Weidner on the other. Aside from a physician they were the only witnesses before either the deputy or the commissioner, each of whom, after seeing all four witnesses, resolved the dispute in defendant's favor. It was the function of the commissioner to find what the facts are and there is insufficient basis for a reversal of his decision.

As stated, the commissioner upon review did not pass upon the defense (which the deputy sustained) that defendant had no knowledge or notice of claimant's alleged injury within ninety days after its occurrence (see Code section 85.23).

Plaintiff argues in effect that since the commissioner made no finding upon this issue as contemplated by Code section 86.25, the district court was not concluded, by section 86.29, upon the question of knowledge or notice but was free to decide it upon the record. We need not consider the soundness of plaintiff's argument. We may observe, however, there is sufficient competent evidence to support a finding either for claimant or for defendant upon this purely fact issue.

Also as stated, the commissioner upon review found and held plaintiff's employment was purely casual and not for the purpose of defendant's trade or business. (See Code section 85.61, subsection 3, paragraph a.) Upon this issue plaintiff

advances the interesting argument that because the deputy commissioner found plaintiff's employment was not casual and defendant did not petition for review of this finding, which was adverse to defendant, the commissioner was not justified in reversing it to defendant's advantage.

It is true Code section 86.24 states "Any party *aggrieved* by the decision *or findings* of a deputy * * * may * * * petition for review * * *." (Italics added.) We need not determine whether defendant was aggrieved by an adverse *finding* of the deputy when the decision was in his favor or whether his failure to petition for review of such finding precluded the commissioner from reversing it. Here again we may observe there seems to be sufficient competent evidence to support a finding for either claimant or defendant on the issue of the casual nature of claimant's employment. This issue also involved largely questions of fact.

 We rest our decision on the ground there is sufficient competent evidence in the record to support the commissioner's (as well as the deputy's) finding and decision that claimant was an independent contractor and not an employee. The judgment of the district court is—Reversed.

All JUSTICES concur except MANTZ, J., not sitting.