## MEEK v. JULIAN.

[No. 16,748.   Filed March 24, 1941.   Rehearing denied
May 7, 1941.   Affirmed by the Supreme Court
October 17, 1941 (219 Ind. 83).]

*Todd & McCormack,* of Indianapolis, for appellant.

*Rocap & Rocap* and *Thomas M. Cooney,* all of Indianapolis, for appellee.

STEVENSON, P. J.—This is an appeal from an award of the Industrial Board wherein compensation was denied the appellant. The full Industrial Board by this award found that the appellant sustained a 46 per cent permanent loss of vision by reason of an accidental injury which he sustained on December 20, 1939. The board further found that the appellant at the time of such accident was not an employee of the appellee within the meaning of the Workmen's Compensation Act and compensation was accordingly denied.

The question presented for our consideration is whether or not the evidence is sufficient to sustain the finding of the Industrial Board. The appellant contends that the evidence discloses that at the time of the accidental injury, he was an employee of the appellee, while the appellee contends that on such occasion the appellant was working as an independent contractor.

The record discloses the following facts: For some time prior to December 20, 1939, the appellant, his brother, son and other men were engaged in the business of plasterers. The appellee was a contractor in and around Marion, Indiana, and engaged in building and repairing houses. The appellant and the men with whom he worked were commonly known as the "Meek Brothers" and they had worked for the appellee on various jobs prior to December 20, 1939. These men, as plasterers, furnished their own tools, including scaffolds and ladders, and worked as a group, the plasterers receiving one dollar an hour for their time and the helpers fifty cents per hour.

The record discloses that shortly prior to December 20, 1939, the appellant and the men with whom he worked were employed by the appellee in plastering a house built by the appellee on West Third street in the city of Marion, Indiana. While so engaged, the appellee

came to them and addressing them all generally said: "Boys, I have another job for you." "It's out on Wabash avenue." "I want you to go out there and do it when you get through here." After the group had finished their work on the new house, they went to the repair job and put on the first coating. Several days later, they returned to complete this job, and it was at this time that the appellant was injured by the dropping of plaster in his eye.

The record further discloses that the appellee was on the job almost daily observing the progress of the work; that he furnished the material with which the work was done; and that he issued the checks by which payment was made, generally to the appellant after receiving a statement of the number of hours worked. As more clearly showing the relationship between the parties, the appellant testified that he and his co-workers, in response to the direction of the appellee, went to work on the Wabash avenue job and were so working at the time of the accident.

The record further discloses the following testimony:

"Q. Who told them where to work?

"A. I don't know that anyone told them. They just went to work and the fellow that took a place finished it up.

"Q. Was Mr. Julian there when you started work that morning?

"A. I don't know whether he was or not.

"Q. He didn't tell you where to work either?

"A. He told us to do the job and we done it, that's all I could say about that and be honest about it."

Also:

"Q. Just what your agreement was?

"A. Whatever we had to do that's what we done.

"Q. Did Mr. Julian ever come on the job and tell you how to do things around the house?

"A. He come on the job. No, he didn't tell us, he told us what he wanted done in the beginning and we done it that way."

And further:

"Q. Did Mr. Julian ever tell you how to plaster?
"A. I don't know as he did. He told us to go do the work and we knew what he wanted and we done it that way.
"Q. Did he tell you what time in the morning to go to work?
"A. He knew what time we went to work, about seven o'clock, and he knowed that.
"Q. He didn't tell you when to go?
"A. Oh, no.
"Q. And he didn't tell you when to quit?
"A. No."

The appellant insists that this record discloses the relationship of employer and employee. The Industrial Board evidently concluded that the appellant on the occasion in question was working as an independent contractor. It, therefore, becomes necessary for us to say whether or not the evidence is sufficient to support the finding of the Industrial Board to the effect that the appellant on the occasion in question was not an employee within the meaning of the Indiana Workmen's Compensation Law.

Questions similar to this have frequently been before our court; and we are not unmindful of the rule many times announced to the effect that it is within the province of the Industrial Board to determine the ultimate facts of the case and if in determining an ultimate fact the Industrial Board reached a legitimate conclusion upon the evidentiary facts, the Appellate Court will not disturb that conclusion even though it might prefer another conclusion, which is equally legitimate. *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293; *National Biscuit Co.* v. *Roth* (1925), 83 Ind. App. 21, 146 N. E. 410.

On the other hand, we are confronted with the rule that,

> "'This court is committed to the proposition that in construing the legislative definition of "employee" a measure of liberality should be indulged to the end that in doubtful cases an injured workman or his dependents may not be deprived of the benefits of the humane provisions of the compensation plan.'" *J. P. O. Sandwich Shop, Inc.* v. *Papadopoulos* (1938), 105 Ind. App. 165, 166, 13 N. E. (2d) 869.

With these rules in mind, we find it necessary, therefore, to review the evidentiary facts in an effort to determine the status of the appellant. The evidence in this case is not in conflict. It is sufficient to establish the existence of some relation between the appellant and appellee. The question of what relation is thereby shown to exist is accordingly a question of law. *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103. This court has defined an independent contractor as "one who makes an agreement with another to do a piece of work, retaining in himself control of the means, method and manner of producing the result to be accomplished, neither party having the right to terminate the contract at will." *Marion Malleable Iron Works* v. *Baldwin* (1924), 82 Ind. App. 206, 209, 145 N. E. 559.

This court has further stated:

> ". . . that the decisive test of relationship under the authorities is the right of control on the part of the employer; . . ." *Lazarus* v. *Sherer,* 92 Ind. App. 90, 98.

The question, therefore, in its last analysis is whether or not the appellee had a right to control and direct the appellant as to the manner and method and time of performing the work.

In the case of *Coppes Bros. & Zook* v. *Pontius* (1921), 76 Ind. App. 298, 131 N. E. 845, this court had before it a similar question. The appellee was employed by the appellants to haul logs. The appellee was to be paid at the rate of $7.00 per thousand and was to furnish his own team and wagon. The appellant gave no directions as to the manner of doing the work, but left the appellee to do the hauling in his own way. In holding that the appellee under such a contract was an employee, the court at p. 302 said:

> "In the case at bar the appellee had not contracted to do a definite piece of work as an entirety. While the appellant did not actually exercise any control over the appellee, the clear inference is that it had the right to exercise unlimited control, had it seen fit so to do. The appellant was free to discharge the appellee at any time, and was free to employ as many other men and teams to haul logs from the same woods as it might desire."

In the case of *Board, etc.* v. *Shertzer* (1920), 73 Ind. App. 589, 591, 127 N. E. 843, the appellee was hired to do painting and paper hanging, the materials to be furnished by the appellants. His compensation was to be $.50 per hour for painting and $.30 per roll for papering. This court said:

> "Under such contract Shertzer could have ceased work at any time he chose, and appellant could have discharged him at any time. The evidence that in the work of putting on the paint and paper Shertzer 'was his own boss' must be considered in connection with the other evidence as to the relationship of the parties to the contract, and, when so considered, it cannot be said that Shertzer must be held to have been an independent contractor."

In the case of *J. P. O. Sandwich Shop, Inc.* v. *Papadopoulos, supra,* the appellant employed the appellee as carpenter to build some booths in a restaurant. The

appellee was instructed to go to work on the job and at the rate of $1.25 per hour. While so working, the appellee was injured. This court said at p. 167:

"Indulging in the 'measure of liberality' referred to in *McDowell* v. *Duer, supra* (78 Ind. App. 440), and *Detrich* v. *Smith, supra* (93 Ind. App. 219), we hold that the evidence sustains the finding of the Industrial Board that appellee was an employee." See also: *Graver Tank & Mfg. Co.* v. *Pohlplatz* (1933), 96 Ind. App. 370, 185 N. E. 167.

In the case at bar, it must be remembered that the appellant was engaged in repair work. The extent of this work was not determined in advance, the pay was to be made on an hourly basis and the appellee was on the job daily to observe the progress of the work. Under such an arrangement the appellee had the right to discharge the appellant at any time and the appellee had the right to quit at any time. The appellee does not assert that he did not have the right to control the appellant in the manner and method of performing this work. The appellee does not contend that he had no right to discharge the appellant at any time. The appellant made a *prima facie* case for himself when he introduced evidence showing that he received an injury by accident while engaged in the service of the appellee under a contract of hire, and that such accidental injury arose out of and in the course of such employment. § 40-1701, Burns' 1940 Replacement. The burden was then upon the appellee to show that such employment was of such a character as constituted an exception to the relationship contemplated in the Workmen's Compensation Act. *Domer* v. *Castator* (1925), 82 Ind. App. 574, 146 N. E. 881. In the absence of specific evidence on the decisive test, the right of control or the retention thereof in the appellee, we hold that the appellant's *prima facie* case

has not been overcome. The facts disclosed by the record support but one conclusion, and we hold that the appellant was an employee of the appellee at the time of his injury, under these facts as a matter of law.

The award of the Industrial Board is reversed.

NOTE.—Reported in 32 N. E. (2d) 737.