ETTA HASSEBROCH, appellant, v. WEAVER CONSTRUCTION COMPANY and BITUMINOUS CASUALTY CORPORATION, appellees.

No. 48614.

(Reported in 67 N.W.2d 549)

DECEMBER 14, 1954.

REHEARING DENIED FEBRUARY 11, 1955.

K. C. Christianson, of Jewell, and Leming & Hobson, of Hampton, for appellant.

C. A. Williams, Jr., of Oskaloosa, for appellees.

GARFIELD, C. J.— We observe at the outset that appellant's opening brief disregards rule 344, Rules of Civil Procedure, in that it contains no statement of the case, the facts, or errors relied on for reversal. The argument contains only three references to the record—two to testimony of one witness, the other to the trial court's judgment. The volume and page in the Iowa Reports are not given for some of the cases cited, as required by rule 344(e). A reasonable effort should have been made to comply with rule 344.

The controversy before the deputy industrial commissioner as sole arbitrator and the commissioner upon review was whether claimant's decedent, Ervin Hassebroch, was, at the time he was fatally injured, an employee of defendant Weaver Construction Company or an independent contractor. Both the deputy and commissioner found he was not an employee but an independent contractor and denied compensation. The district court held there was sufficient competent evidence to warrant the commissioner's decision and affirmed it. Claimant has appealed to us. We affirm the district court.

Although we have frequently called attention to the functions of the industrial commissioner and the court in cases of this character it seems desirable to do so once more. "* * *

In the absence of fraud the findings of fact made by the industrial commissioner * * * shall be conclusive." Section 86.29, Code, 1954. Insofar as here applicable section 86.30 provides any decision of the commissioner "may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence * * * to warrant * * * the order or decision." There is no claim of fraud here.

In our latest pronouncement regarding these statutory provisions, Bocian v. Armour & Co., 244 Iowa 304, 306, 56 N.W.2d 900, 901, 902 (Smith, C. J.), we say: "We have repeatedly and consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inference fairly to be drawn from the facts. Taylor v. Horning, 240 Iowa 888, 890, 38 N.W.2d 105; Bruner v. Klassi, 241 Iowa 1007, 1011, 44 N.W.2d 366; Reynolds v. George & Hoyt, 230 Iowa 1267, 1271, 300 N.W. 530; Lindahl v. L. O. Boggs Co., 236 Iowa 296, 307, 18 N.W.2d 607, are some of the more recent cases. The real test is the sufficiency of the evidence to support the finding [citations]. The finding of the commissioner is on the same footing as a jury verdict [citations]."

Some decisions other than Bocian v. Armour & Co., supra, and the four cited therein which hold the commissioner's findings of fact are conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn therefrom are: Schmidt v. Pittsburgh Plate Glass Co., 243 Iowa 1307, 1316, 55 N.W.2d 227, 232; Yergey v. Montgomery Ward & Co., 239 Iowa 258, 264, 30 N.W.2d 153, 155; Reddick v. Grand Union Tea Co., 230 Iowa 108, 114, 296 N.W. 800, 803, and citations; Everts v. Jorgensen, 227 Iowa 818, 828, 289 N.W. 11; Gardner v. Trustees of M. E. Church, 217 Iowa 1390, 1401, 250 N.W. 740, 745; Enfield v. The Certain-Teed Prod. Co., 211 Iowa 1004, 1008, 233 N.W. 141; Norton v. Day Coal Co., 192 Iowa 160, 162, 180 N.W. 905.

Gardner v. Trustees of M. E. Church, supra, states: "It is the settled law of this state that, although there is no con-

flict in the evidence, if the facts are such that different conclusions can reasonably be reached therefrom, then the question becomes one of fact for the determination of the commissioner. Can we say, as a matter of law, that all minds would reasonably reach the same conclusion under the evidence in this record * * *? If not, then the question was one of fact for the determination of the industrial commissioner, and his findings thereon are final."

Reddick v. Grand Union Tea Co., supra, says: "Where the facts are in dispute, or where reasonable minds may differ on the inferences fairly to be drawn from the proven facts and circumstances, the findings of the commissioner are conclusive. *And this is true even though the court might arrive at a different conclusion from the evidence.* If the evidence presents a question which should have been submitted to the jury, if the trial were before a jury, then the court is bound by the findings of the commissioner." (Emphasis added.)

The Gardner and Reddick cases, just quoted from, have been followed several times.

See also 27 Am. Jur., Independent Contractors, section 60; 57 C. J. S., Master and Servant, section 617a(5), which says: "Where the facts are in dispute or they are susceptible of more than one inference, the question is one of fact * * *. Where the facts are undisputed and the evidence is reasonably susceptible of but a single inference, the question whether the relationship of employer and independent contractor exists is one of law for the court."

A few of our more recent precedents, not under the compensation act, which point out that an issue should be submitted to a jury where the evidence is such that reasonable minds may reach different conclusions therefrom are Anderson v. Elliott, 244 Iowa 670, 673, 57 N.W.2d 792, 794 ("It is a question not only of whether there was a conflict in the evidence, but whether, even as to undisputed facts, they are such that reasonable minds might differ in interpreting them; * * *."); Schneider v. Parish, 242 Iowa 1147, 1151, 49 N.W.2d 535, 537; Hebert v. Allen, 241 Iowa 684, 687, 41 N.W.2d 240,

242; Davis v. Knight, 239 Iowa 1338, 1341, 1342, 35 N.W.2d 23, 25; In re Estate of Coleman, 238 Iowa 768, 771, 28 N.W.2d 500, 503; Lawson v. Fordyce, 234 Iowa 632, 636, 12 N.W.2d 301, 303; Odegard v. Gregerson, 234 Iowa 325, 329, 330, 12 N.W.2d 559, 561.

Unless, then, it can be said as a matter of law from the record here that claimant's decedent was an employee, not an independent contractor, at the time of his fatal injury, there is no ground for interfering with the commissioner's decision. We think there is sufficient competent evidence to warrant the decision that decedent was an independent contractor and it cannot be held as a matter of law he was an employee.

Decedent's status depends upon a determination of the facts or the reasonable inferences to be drawn therefrom and not, as in Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254, and some of our other precedents, the construction of a written contract which is a matter for the court. See Yergey v. Montgomery Ward & Co., supra, 239 Iowa 258, 266, 30 N.W.2d 153, 156; Taylor v. Horning, 240 Iowa 888, 890, 38 N.W.2d 105, 107. The facts here are quite unlike those in the Mallinger case, supra.

56 C. J. S., Master and Servant, section 13, says: "Ordinarily, the determination of the relationship of master and servant is a question of fact, but the question of the relation created by a written contract * * * is ordinarily one of law for the court * * *."

The compensation act provides an independent contractor shall not be deemed an employee. Section 85.61, subsection 3b, Code, 1954. Since the act does not define "independent contractor" we have uniformly held it necessary to resort to the common law for its meaning. Taylor v. Horning, supra, and citations, at page 891 of 240 Iowa, page 107 of 38 N.W.2d.

The term "independent contractor" is defined and explained in Mallinger v. Webster City Oil Co., supra, 211 Iowa 847, 851, 234 N.W. 254; Meredith Pub. Co. v. Iowa Employment Security Comm., 232 Iowa 666, 672–675, 6 N.W.2d 6, 10, 11, and citations; Sanford v. Goodridge, 234 Iowa 1036, 1042, 13

N.W.2d 40, 43, where we say, "An independent contractor is one who, by virtue of his contract, possesses independence in the manner and method of performing the work he has contracted to perform * * *."

The principal accepted test of an independent contractor is that he is free to determine for himself the manner in which the specified result shall be accomplished. Article by Maurice H. Merrill, 32 Iowa Law Review 1, 19, and citations. See also McDonald v. Dodge, 231 Iowa 325, 328, 1 N.W.2d 280, 282, and citations; 56 C. J. S., Master and Servant, section 3(3). This and other tests are enumerated in Mallinger v. Webster City Oil Co., supra, 211 Iowa 847, 851, 234 N.W. 254, and several later decisions which quote from it. Such other tests are, in substance: the existence of a contract for a certain piece of work at a fixed price, independent nature of his calling, his right to hire and supervise assistants, his obligation to furnish necessary tools and equipment, the time for which he is employed, the method of payment—whether by the job or by time, whether the work is part of the employer's regular business. See also 56 C. J. S., Master and Servant, section 3(2).

Restatement, Agency, section 220, sets out nine matters of fact which, with others, are considered in determining whether one is an employee or independent contractor. They are about the same as the tests given in the Mallinger case, supra, with this addition: whether or not the parties believe they are creating the relationship of master and servant. Comment b under section 220 states "it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relationship."

We will refer to the testimony, some of which supports the commissioner's conclusion decedent was an independent contractor. Defendant Weaver Construction Company (we call it Weaver) was engaged in the crushed rock and gravel business. It had a stationary plant at its quarry at Alden and portable plants, one of which was used in performing a written contract it had with Franklin County to gravel some secondary roads. Defendant had some trucks of its own, operated by men who were clearly its employees, which hauled gravel from the port-

able plant at a county-leased pit to the roads being surfaced. It also orally contracted with owners of other trucks to haul gravel from the portable plant to the roads. Decedent was one such owner.

Decedent was a farmer who owned three trucks and did a good deal of trucking business. He drove one truck himself and hired and paid two drivers for the others. All three trucks were hauling gravel for Weaver on this Franklin County Project (2-B).

One, possibly two, of decedent's trucks had his name and telephone number painted thereon. Weaver had its name painted on its own trucks—not on others. Decedent paid for the gasoline, oil and repairs on his trucks and carried liability insurance on them. Weaver paid decedent on a ton-mile basis for the gravel hauled by his three trucks. The drivers of Weaver's own trucks were paid by the hour. While Weaver fixed the route between the plant and surfacing operations as a basis for the mileage to be paid, decedent and his drivers were free to choose their own route. Decedent was not on the prescribed route with his empty truck when he was fatally injured.

Decedent had a right to hire and pay a substitute to drive for him without consulting Weaver and would collect from defendant on a ton-mile basis for the gravel hauled by the substitute. Decedent and his drivers determined the size of each load and were responsible for overloads. The different drivers arranged among themselves the order in which the trucks were loaded and moved away from the plant—they "took turns." The county maintained an employee at the plant (or pit) to weigh each load and another man at the end of the haul who told the drivers where to dump their loads.

A driver for decedent testified there was no control over the speed at which his trucks operated. Decedent was not required to have any specified number of trucks on the job. Weaver had nothing to do with hiring decedent's drivers and had no authority to discharge them. Decedent was not required to report for work if he did not want to. He could quit if he wanted to and Weaver had a right to terminate the relationship between them. If Weaver asked decedent or his drivers

if they wanted to haul from a different pit they did not have to go. "We had the choice." Sometimes drivers who did not dump properly were told to go somewhere else.

Decedent did trucking for others part of the time his trucks were engaged on Project 2-B. He bought crushed rock from Weaver, sold and delivered it to different customers of his. A few days before his fatal injury decedent applied to the Iowa Commerce Commission for a permit to act as a contract carrier under the name Hassebroch Truck Lines of Jewell, Iowa.

Weaver was subject to the so-called Wage and Hour law. The drivers of its own trucks worked regularly 40 hours per week and received "time and a half" hourly pay for overtime. Weaver deducted from their pay the federal withholding tax, social security and unemployment compensation. They were employed full time. If there was no trucking to do Weaver provided other work for them. Decedent and his drivers, however, did not work full time and there were no deductions from the amount paid decedent (on a ton-mile basis) except, as stated, for gasoline, oil or repairs decedent may have purchased at his option from Weaver.

At the review hearing before the commissioner George Gibson, Weaver's general superintendent stationed at the pit, testified he gave no specific orders to decedent "other than, if he called and asked me if we had work for his two trucks I would let him know where the work was and when we would start. I called him sometimes. He was always anxious to get jobs. I would tell him where to report for work. * * * I can't think of any orders I gave the drivers other than I was interested in keeping the plant running and getting the gravel on the road to finish this contract. If I had work available I called Hassebroch. He didn't have to go to work if he didn't want to. I told the drivers to pick up the oil cans as Mr. Pitsor told me he wanted the place cleaned up." Pitsor evidently owned the land where the gravel pit was.

A driver for decedent testified that if the loads were too small "Gibson told us to keep them as full as possible" and once Gibson told him to drive as fast as he could because they were short on trucks.

■ The above is a sufficient indication of the testimony except as to one matter. The contract between Weaver and Franklin County includes a standard specification prepared by the state highway commission which states "The contractor [Weaver] shall not assign or sublet any portion of his contract or the work provided therein without the written consent of the Board [county board of supervisors]." The board never gave any such written consent.

The chairman of the county board said he knew Weaver and other such contractors used outside truckers on these jobs and "we never objected to the practice" but that he knew nothing of Weaver's relationship to the truckers. The administration engineer for the state highway commission testified the commission has not required counties to give written consent where the principal contractor hires so-called contractor outside haulers, owning and maintaining their own trucks, on a per ton-mile or unit basis.

The deputy commissioner as sole arbitrator, the commissioner on review and the district court upon appeal all considered the above provision of the contract between Weaver and the county and the absence of written consent to any subletting. All held these facts were not controlling as to the true relationship between Weaver and Hassebroch. The district court pointed out that decedent was not a party to the written contract between Weaver and the county, the agreement between decedent and Weaver rested in parol, its terms and effect were to be ascertained largely from the relevant conduct of the parties, if Weaver actually sublet part of the work the fact he had agreed not to do so without consent would not show more than that he had breached his promise to the county in failing to obtain consent.

Incidentally we may observe that another specification of the contract between Weaver and the county defines "independent contractor" as "any person * * * who contracts with the contractor to perform a service for which the basis of payment is in terms of units of service rather than salary or wages." It seems clear, however, that decedent would not be bound by this provision of a contract to which he was not a party.

We think there is substantial evidence to support several if not all of the recognized tests of an independent contractor. Indeed able counsel for claimant frankly conceded in oral argument there are some elements in the case that tend to show decedent was an independent contractor. There is competent testimony that decedent was free to determine for himself the manner in which the specified result would be accomplished.

That Weaver's superintendent told decedent or his drivers to pick up oil cans left at the pit, and may have told one of the drivers to fill his truck as full as possible or to drive as fast as he could, do not, in the light of the entire record, necessarily show control over the manner and method of performing the work. The commissioner could properly find from the superintendent's evidence that no orders were given except to pick up the oil cans or that, if given, they were in the nature of suggestions rather than authoritative control. See McDonald v. Dodge, supra, 231 Iowa 325, 330, 1 N.W.2d 280, 283; Lind v. Eddy, 232 Iowa 1328, 1333, 6 N.W.2d 427, 429, 146 A. L. R. 695, 699.

 Every contract for work reserves to the employer a degree of control, at least to enable him to see that it is done according to the contract. Such limited control does not necessarily indicate a master-servant relationship. Meredith Pub. Co. v. Iowa Employment Security Comm., supra, 232 Iowa 666, 673, 674, 6 N.W.2d 6, 10, 11, and citations; Page v. Koss Construction Co., 215 Iowa 1388, 1398, 245 N.W. 208.

The conclusion is justified that the contract between Weaver and decedent was for certain work at a fixed price. It plainly appears decedent was in the independent trucking business; he had the right to hire and supervise his own drivers and in fact did so; he was obligated to furnish his own trucks, pay for gasoline, oil, repairs and insurance, and did so furnish them (this is important; Restatement, Agency, section 220, comment g); decedent was not employed for any particular time; payment was not on a time basis but, at least in a sense, was by the job; although Weaver owned and operated at times some trucks of its own, it was not in the trucking business.

As we have indicated, it is clear the drivers of Weaver's

own trucks were its employees, not independent contractors. It is equally plain there are marked differences in the relationship between Weaver and its own drivers and that between Weaver, decedent and the other two drivers of decedent's trucks. Decedent's drivers were quite clearly his employees, not employees of Weaver. It is a proper and perhaps necessary inference that decedent was no more subject to Weaver's control as to manner and method of doing the work than were the drivers hired by decedent. See Pace v. Appanoose County (Ladd, J.), 184 Iowa 498, 510, 168 N.W. 916.

There is no suggestion in the record or briefs that decedent's drivers, while in the general employ of decedent, were temporary or special servants of Weaver under the so-called "borrowed-servant" doctrine recognized in Anderson v. Abramson, 234 Iowa 792, 13 N.W.2d 315, Miller v. Woolsey, 240 Iowa 450, 455, 35 N.W.2d 584, 587, 588, and Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1144–1146, 49 N.W.2d 501, 507, 508.

Further, we have held the borrowed-servant or "loaned employee" doctrine does not apply in workmen's compensation cases in view of statutory definitions in the act. Muscatine City Water Works v. Duge, 232 Iowa 1076, 1084, 1085, 7 N.W.2d 203, 207, 208; Hoover v. Independent School District, 220 Iowa 1364, 264 N.W. 611; Knudson v. Jackson, 191 Iowa 947, 183 N.W. 391. See also annotation 152 A. L. R. 816, 869, and earlier annotations therein cited.

Aside from the above, it is clear decedent's drivers were not temporary servants of Weaver—certainly not as a matter of law. In the absence of evidence to the contrary there is an inference the servant remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by his general employer. Such a continuation is also indicated where the employee is using a machine or appliance of considerable value belonging to his general employer. There was no attempt here to show decedent transferred to Weaver the right of full control over the former's drivers. Mere right of the temporary employer to direct a servant what work to do and when and where to do it is insufficient to show full control.

See in support of what we have just said Anderson v. Abramson, supra (Mulroney, J.), 234 Iowa 792, 794, 795, 13 N.W.2d 315, 316; Rozmajzl v. Northland Greyhound Lines, supra, 242 Iowa 1135, 1144–1146, 49 N.W.2d 501, 507, 508; War Emergency Co-op. Assn. v. Widenhouse (Judge Parker), 4 Cir., N. C., 169 F.2d 403, 406; Comments under section 227, Restatement, Agency.

Upon facts quite similar to those here we have held as a matter of law there was an independent contractor relationship. Lind v. Eddy, supra, 232 Iowa 1328, 6 N.W.2d 427, 146 A. L.·R. 695; Burns v. Eno (Evans, J.), 213 Iowa 881, 240 N.W. 209 (closely in point on the facts); In re Estate of Amond, 203 Iowa 306, 210 N.W. 923; Svoboda v. Western Fuel Co., 195 Iowa 1137, 193 N.W. 406; Pace v. Appanoose County, supra, 184 Iowa 498, 507–518, 168 N.W. 916; Ash v. Century Lbr. Co. (Ladd, J.), 153 Iowa 523, 133 N.W. 888, 38 L. R. A., N. S., 973. See also Page v. Koss Constr. Co., supra, 215 Iowa 1388, 245 N.W. 208, and Arthur v. Marble Rock Consolidated School Dist., 209 Iowa 280, 228 N.W. 70, 66 A. L. R. 718, which, however, involve construction of written contracts.

We have also held evidence similar to that here furnished sufficient support for the commissioner's finding the workman was an independent contractor. Norton v. Day Coal Co., supra, 192 Iowa 160, 180 N.W. 905. No precedent has come to our attention where, upon similar testimony, we have held the commissioner's decision there was an independent contractor relationship lacked sufficient support.

We hold there is sufficient evidence here to warrant the commissioner's decision that decedent was not an employee but an independent contractor.—Affirmed.

BLISS, WENNERSTRUM, SMITH, THOMPSON, and LARSON, JJ., concur.

MULRONEY, OLIVER and HAYS, JJ., dissent.

MULRONEY, J. (dissenting)—I respectfully dissent. The majority opinion does not exactly state there was no dispute in the evidence but it mentions none. And I can only read the

forepart of the majority opinion as holding the commissioner's finding that claimant's decedent was an independent contractor was a finding of fact. The statute (section 86.29, Code, 1954) and so much case authority is cited to support the familiar rule that the commissioner's finding of fact is conclusive, that I assume the majority is holding no question of law was presented for review and the commissioner's finding that claimant was an independent contractor was a finding of fact and binding on the trial court, because there was sufficient evidence to support it. The decision of the trial court is not a bit vague. In his opinion he states:

"It may be conceded that there really is no important controversy so far as the evidence is concerned. As claimant says, the job here is not to decide what evidence is true. The job is to determine what the conceded evidence means. * * *."

The trial court's opinion goes on to hold the commissioner's finding from the undisputed evidence was a finding of fact. In argument in this court the claimant quotes the following from the commissioner's finding: "the defendants established the claimant's deceased husband was an independent contractor" and defendants state: "The District Court held that this was a finding of fact and not a conclusion of law and that he was concluded thereby."

I. We start then with the proposition that there is no dispute in the evidence and the question is whether the commissioner's finding that claimant was an independent contractor was a finding of fact, binding upon the reviewing court. Who had the burden to prove that an independent contractor relationship existed? Where the workman shows he is performing services in furtherance of the usual trade or business of the employer he makes out a prima-facie case of an employee and the burden is on the alleged employer to show the workman was an independent contractor. Garrison v. Gortler, 234 Iowa 541, 13 N.W.2d 358; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254; Dobson's Case, 124 Maine 305, 128 A. 401, 42 A. L. R. 603; 58 Am. Jur., Workmen's Compensation, section 435; 56 C. J. S., Master and Servant, section 12; Schaller v. Industrial Accident

Commission, 11 Cal.2d 46, 77 P.2d 836; Drillon v. Industrial Accident Commission, 17 Cal.2d 346, 110 P.2d 64; Board of Comrs. of Allen County v. Gable, 115 Ind. App. 102, 112, 57 N.E.2d 69, 73; Welch v. Reiling, 170 Tenn. 698, 99 S.W.2d 216.

The above are just a few of the scores of cases that could be cited for the proposition that when a claimant establishes an injury in the performance of work for the benefit of the alleged employer under some contract of hire, the employer has the burden of proving the claimant was an independent contractor. Indeed I can find no authority for a contrary holding and none is cited in the majority opinion.

In Board of Comrs. of Allen County v. Gable, supra, it is held: "When a claimant establishes that he was in the service of an employer under a contract of hire, express or implied, and the employer asserts the claimant was an independent contractor, the burden is on the employer to prove such fact. Where there is doubt as to whether the claimant was an employee or independent contractor, the doubt is resolved in favor of the claimant. Meek v. Julian, 1941, 219 Ind. 83, 85, 86, 36 N.E.2d 854."

In the Mallinger case, supra, page 857 of 211 Iowa, page 259 of 234 N.W., the opinion states: "The person employed to perform the acts contemplated by the employment must be either a servant or an independent contractor. He cannot be both at the same time. * * * In the absence of any express waiver of rights [of control over the workman], it is presumed that the rights were reserved."

In Kaus v. Unemployment Compensation Comm., 230 Iowa 860, 864, 299 N.W. 415, 418, the Mallinger case is cited as authority for the proposition that: "The reservation of the right of control [in the employer] is presumed unless the contrary appears."

The commissioner in this case recognized that the burden was on the alleged employer and its insurer to show the independent contractor relationship existed. In his findings he states: "The burden is on the defendants to establish the deceased employee was an independent contractor at the time of the fatal injury. Garrison v. Gortler, 234 Iowa 541 [13 N.W.2d 358]."

The Garrison case involved an issue of whether the workman

was a casual employee but it is proper authority in the instant case. Section 85.61, Code, 1954, excepts three classes of workmen from the definition of employees: (a) casual employees (b) independent contractors, and (c) officers. The court in the Garrison case was deciding an issue under (a) above but in the course of the opinion Justice Bliss, speaking for the court, stated at page 564 of 234 Iowa, page 368 of 13 N.W.2d: "The appellant made out a prima-facie case of employment by the appellee when he established that he was in the service of the latter under a contract of hire. The burden was then upon the appellee, in defense, to establish that appellant was an independent contractor, or that he was engaged in employment not for the purposes of appellee's trade or business [citations]."

In the majority opinion it is stated: "Unless, then, it can be said as a matter of law from the record here that claimant's decedent was an employee, not an independent contractor, at the time of his fatal injury, there is no ground for interfering with the commissioner's decision. We think there is sufficient competent evidence to warrant the decision that decedent was an independent contractor and it cannot be held as a matter of law he was an employee."

In view of the fact that the burden was on defendants to show claimant's decedent was an independent contractor I think the above proposition unsound. I think the commissioner found as a matter of law from undisputed evidence that claimant's decedent was an independent contractor and that decision was reviewable by the court. Indeed the exact reverse of the proposition quoted above from the majority opinion is true. Unless it can be said as a matter of law from the record here that claimant's decedent was an independent contractor at the time of his fatal injury, the commissioner's decision cannot be sustained.

II. Throughout the majority opinion the thought is expressed that the commissioner's finding that claimant's decedent was an independent contractor would be a finding of fact even though the evidence was undisputed because the commissioner is at liberty to take either of opposing inferences from undisputed evidence. I have no quarrel with the general rule, but the majority applies it as if the commissioner were at liberty to take the

evidence of facts and circumstances showing claimant's decedent was an employee, and the evidence showing claimant's decedent was an independent contractor, and decide either way, and the decision would be a decision of a fact question binding upon the reviewing court. Such a holding is absolutely destructive of any right of appeal in a case where the evidence is not in dispute. This is pointed out in the Mallinger opinion where Judge De Graff pointed out the undisputed evidence made a question of law, and if the commissioner's ruling would be conclusive "there would be an ouster of judicial power now vested in the courts." On the same reasoning expressed in the majority opinion, the commissioner's finding if against the defendants would have to be upheld —because there was sufficient evidence to support the finding that claimant's decedent was an employee. The full sweep of such a rule as the majority announces would mean the commissioner could today hold one truck driver an employee, and tomorrow another truck driver on the same job under identical evidence an independent contractor, and both decisions would be binding on the reviewing court. This is obviously not the law. About twenty driver-owned trucks operated on this gravel hauling job for Weaver. The relationship between Weaver and these truckers was the same in each instance. That relationship was shown by undisputed evidence. It ousts the court of all jurisdiction if it cannot decide whether this evidence establishes the independent contractor relationship.

The fallacy of the majority opinion, as I see it, lies in the application of the rule that the commissioner is free to draw inferences from admitted facts. The majority applies it to the ultimate fact of whether or not an independent contract existed. The rule can only be applied to evidentiary facts. Wigmore in his treatise on evidence distinguishes two kinds of facts: *"factum probandum"* that which one party affirms and the other denies, or the proposition to be established, and *"factum probans"*, or the material evidencing the proposition, or evidentiary facts. 1 Wigmore, Evidence, Second Ed., Section 2. When we speak of "admitted facts" or "undisputed facts" or "facts that are not in dispute but susceptible of more than one inference" we

obviously mean evidentiary facts or *factum probans*. The ultimate fact cannot be admitted or undisputed for then there would be no controversy. In the instant case the evidence showing the method by which the employer carried on its business was without conflict. The employer seeks to prove the independent contract by evidence of facts and circumstances. It is that evidence which is without conflict. Whether it is sufficient is a question of law, reviewable by the court. If the undisputed evidence to establish those facts and circumstances is subject to opposing inferences as to whether or not they existed, the trier of fact can determine which inference to accept, but the question of the sufficiency of the undisputed evidence to establish the contract is still a question of law. All the reviewing court does is give that evidence the inference favorable to the existence of the evidentiary facts and decide the legal question of whether the contract was established. See Jurisdiction of the Courts in Cases of Undisputed Facts Under the Iowa Workmen's Compensation Act, 11 Iowa Law Review 381. This is but an application of a general rule of contract law when the quest is as to the existence of a contract between parties upon evidence of undisputed facts. The rule is thus expressed in 17 C. J. S., Contracts, section 611:

"Whether certain or undisputed facts establish a contract is a question of law for the court, but the existence of such facts * * * are, where the evidence is conflicting or admits of more than one inference, questions for the jury or the court as a trier of the facts."

Justice Evans, speaking for this court, gave proper application of this rule in National Produce Co. v. Dye Yaus Co., 199 Iowa 286, 289, 201 N.W. 572, 574. There, as here, the evidence was undisputed but part of the evidence relied upon to establish the contract was oral and it was argued this presented a fact question. The court stated: "Of course, if the oral evidence presented a disputed fact, such dispute, if material, would present a jury question. But it would still remain a question of law, for the court, whether the oral evidence, in its most favorable aspect, disclosed the consummation of a contract."

III. As the trial court held in this case there is no dispute in the evidence. The trial court said: "The job is to determine

what the conceded evidence means. Essentially this is a process of applying rules of law to a mass of essentially undisputed evidence and then saying what that evidence means in terms of a relationship." I subscribe to that but I think the trial court erred when he went on to say the decision was one of fact "within his [the commissioner's] uncontrolled province." The courts, with singular unanimity, have said the question of whether the claimant was an employee or independent contractor is a question of law where there is no dispute in the evidence. Garcia v. Vix Ice Cream Co., Mo. App., 147 S.W.2d 141; Meek v. Julian, 109 Ind. App. 489, 32 N.E.2d 737, 740; Whitney v. Mountain States Motors Co., 106 Colo. 184, 102 P.2d 743; Mason v. State Industrial Commission, 188 Okla. 566, 111 P.2d 814; Bradshaw v. State Industrial Commission, 191 Okla. 222, 127 P.2d 801; Beach v. McLean, 219 N. C. 521, 14 S.E.2d 515. See also Pribyl v. Standard Elec. Co., 246 Iowa 333, 67 N.W.2d 438.

The only decision of this court cited in the majority opinion which has language that would lend any support at all to the conclusion that the commissioner makes a decision of fact when deciding whether a claimant was an employee or independent contractor is Norton v. Day Coal Co., 192 Iowa 160, 180 N.W. 905. But the opinion does not show that the evidentiary facts were undisputed and the strong dissenting opinion of Chief Justice Weaver in the case reviews evidence that would seem to conflict with evidence reviewed in the majority opinion.

The majority opinion cites the following workmen's compensation cases where the issue was whether claimant was an employee or independent contractor on undisputed evidence: Mallinger v. Webster City Oil Co., supra; Pace v. Appanoose County, 184 Iowa 498, 168 N.W. 916; Arthur v. Marble Rock Consol. Sch. Dist., 209 Iowa 280, 228 N.W. 70, 66 A. L. R. 718. None of them holds the commissioner's decision on undisputed evidence of whether claimant was an independent contractor or employee was a fact decision, binding upon the reviewing court. Indeed in the Mallinger case, where there was a written contract with explanatory oral evidence, the court stated at page 859 of 211 Iowa, page 260 of 234 N.W.:

"The facts in this case are undisputed, and when the facts are found, then a question of law alone is presented."

In Garrison v. Gortler, supra, Justice Bliss stated at page 565 of 234 Iowa, page 369 of 13 N.W.2d: "Appellee's last proposition is that we are bound by the commissioner's findings. There is no dispute in, the evidence as to any material fact. The conclusions of the commissioner are, therefore, not of fact but of law, and are reviewable on appeal. Guthrie v. Iowa Elec. Co., 200 Iowa 150, 204 N.W. 225; Baldwin v. Sullivan, 201 Iowa 955, 204 N.W. 420, 208 N.W. 218; Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N.W. 516; Johnston v. Chicago & N. W. Ry. Co., 208 Iowa 202, 225 N.W. 357."

IV. Most of the undisputed evidence of facts and circumstances showing the relationship of claimant's decedent to defendant Weaver Construction Company is reviewed in the majority opinion. The majority says "some" of it "supports the commissioner's conclusion decedent was an independent contractor." The question is whether it shows sufficient facts and circumstances to warrant the holding that claimant's decedent was an independent contractor as a matter of law. This must be true or, as I pointed out earlier, there would be no appeal at all for either party. In every case of this nature there would be plaintiff's prima-facie case of employee and, as here, *some* evidence of independence in the relationship. If the commissioner can bind the reviewing court by a decision either way the appeal is useless. The question is not whether there was *some* evidence to support the conclusion of the commissioner. The question is whether the undisputed evidence of the relationship establishes the independent contract. I would answer this question that it does not.

V. The majority opinion places little value on the fact that Weaver's contract with the county prohibited any subcontract without the county's consent. I think this evidence important. In the absence of a written modification of the contract, Weaver agreed to do the work with employees and now he is asserting a workman, performing the work of the contract, was not his employee. I think there is some estoppel that works against his present claim that he was not the worker's employer and, in any

event, it shows a present claim of status that is inconsistent with his written contract. Weaver's contract with the county would be sufficient to raise a presumption of master-and-servant relationship between Weaver and his workmen in any suit against Weaver by a third party injured by the negligence of his worker. Parsons v. City of Athens, Tex. Civ. App., 78 S.W.2d 1098.

The board of supervisors knew that Weaver and other contractors hired outside truckers on all of their jobs. This is not a case of the hiring of one or two outside truckers to supplement the work of Weaver's own trucks. Weaver's employees testified Weaver bid on many jobs but he only owned a few trucks. They said Weaver's trucks were never used on any job except to supplement a shortage of driver-owned trucks on the job. An official of the Weaver Company said: "We keep a few [trucks] and use them when we have to." Weaver's superintendent on this job stated: "If there weren't enough trucks, I called in Weaver's trucks." The force of the commissioner's ruling is that Weaver and the county entered into a contract whereby Weaver contracted to do all of the work of the contract *with employees* and not to sublet any of the work to other contractors, and both contracting parties knew and intended all of the work would be performed by subcontractors.

I think this undisputed evidence shows strong evidence of the practical interpretation of the contracting parties that those workmen who did the work of the contract would be employees and not subcontractors. It might be true, as the majority states, "if Weaver actually sublet *part* of the work the fact he had agreed not to do so without consent would not show more than that he had breached his promise * * *." (Italics supplied.) I think it is just as true, when Weaver shows *all, or substantially all,* of the work was to be done by driver-owned trucks, and the county knew this, Weaver is stating, and the county is agreeing, that the outside truckers will be his employees. This is not a case of subletting part of the work of a contract in violation of an agreement not to sublet without permission. The parties knew all of the work would be done by workmen who owned their own trucks who would be *hired* (and the job superintendent used the word "hired") by Weaver. In view of Weaver's agreement

not to sublet I consider it strong evidence that the "hired" workmen were employees and so considered by Weaver and the county.

In Schriver v. J. S. McLaughlin & Sons, 227 Iowa 580, 586, 288 N.W. 657, 661, where there was a similar prohibition against subletting in the contractor's contract with the Highway Commission, the contractor made a similar claim that the workman claiming workmen's compensation was an independent contractor. In upholding the award we held: "To establish claimant as an independent contractor, it was likewise necessary to show that he was a subcontractor and not an employee. The record shows no effort on the part of either claimant or the defendant to establish such a status. [Written consent of the Highway Commission was required by the contract.] The record shows that defendant was endeavoring to comply with the rules and regulations applicable to the project. We must assume that they acted in good faith. On such assumption, under the record herein, the commissioner was clearly warranted in holding that defendant accepted claimant as its employee."

VI. But the chief test is one of control. Numerous definitions of the term, independent contractor, have been given by the authorities but they are not essentially different. In Pace v. Appanoose County, 184 Iowa 498, 508, 168 N.W. 916, 919, we quoted these textbook statements with approval:

"In Vol. 1, Labatt's Master & Servant (2d Ed.), Section 64, the author says that:

" 'The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done, and the party who is to do the work, unless the former has retained the right to exercise control over the latter, in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test by which the servants are distinguished from independent contractors.' "

In the foregoing opinion (page 509) we also quoted from Thompson on Negligence, Second Ed., Section 629, where the author states: " 'The test lies in the question whether the con-

tract reserves to the proprietor the power of control over the employee.' "

A good statement of the chief test to be applied is the one which Corpus Juris Secundum draws from the authorities and states at 42 C. J. S., Independent (def.), pages 639 and 640: "The chief or master test, or the principal consideration in determining the question, is the right to control the manner of doing the work, so that, generally speaking, it may be stated that if the employee is under the control of the employer he is a servant or employee and not an independent contractor, but if, in the performance of the work, he is not under the control of the employer he is an independent contractor; it is not, however, the actual exercise of the right by interfering with the work but rather the right to control which constitutes the test."

From the above it will be seen that Weaver had the burden of showing he had relinquished control over claimant's decedent as to the manner of doing the work. Not one bit of evidence in this record, giving it the inferential aspect most favorable to defendants, establishes that Weaver relinquished control over claimant's decedent. The workman picked up his load of gravel at Weaver's pit and took it where he was told to take it and dumped it on the highway where he was told to dump it. The secretary and treasurer of the Weaver Construction Company said so far as he knew no one had ever been fired, but he added: "I suppose if a man didn't do his work properly we would have to put him off." The commissioner found the employer "could terminate his employment at will without liability." This bit of testimony by the job superintendent is illuminating: "I had a right to terminate them." "Q. I asked you if you did not have the right to fire them if they did not do according to the rules that were laid down. A. I had a right to terminate them."

In view of this testimony the workman enjoyed about as much independence as a ditchdigger who used his own shovel or wheelbarrow. Like any other employee he did what he was told to do each day that he worked. He did not have to go to work if he did not want to, and he could quit any time and the employer had the right to fire him any time. The retention of this last right

to fire at any time strongly tends to negative any relationship of independent contractor.

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work that is usually enjoyed by an independent contractor." Bowen v. Gradison Construction Co. (October 1930), 236 Ky. 270, 277, 32 S.W. 2d 1014, 1017.

"No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." Cockran v. Rice, 26 S. D. 393, 397, 128 N.W. 583, 585, Ann. Cas. 1913B 570.

" 'The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists.' " Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 25, 117 S.W. 346, 348, 19 Ann. Cas. 1.

"By virtue of its power to discharge, the company could at any moment direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. Franklin Coal & Coke Co. v. Ind. Comm., 296 Ill. 329, 129 N.E. 811. The most important point 'in determining the main question (contractor or employee) is the right of either to terminate the relation without liability.' Industrial Comm. v. Hammond, 77 Colo. 414, 236 P. 1006." Industrial Commission v. Bonfils, 78 Colo. 306, 308, 241 P. 735, 736.

In Pace v. Appanoose County, supra, where we held the workman was an independent contractor we were careful to point out the county had no authority to discharge the workman.

In Norton v. Day Coal Co., 192 Iowa 160, 164, 180 N.W. 905, 907, we said: "Norton is not an employee, within the act, because there was no right to discharge him, and the right to discharge for misconduct or disobedience is an essential test. Pace v. Appanoose County, 184 Iowa 498; Ash v. Century Lbr. Co., 153 Iowa 523; Pillsbury's case, 172 Cal. 807 (159 Pac. 721) ; Stewart v. California Impr. Co., 131 Cal. 125 (63 Pac. 177) ; Quarman v.

Bennett, 6 M. & W. 497; Tuttle v. Embury-Martin Lbr. Co., 192 Mich. 385 (158 N.W. 879); Carleton v. Foundry & M. P. Co., 199 Mich. 148 (165 N.W. 816, at 817); Pioneer F. C. Co. v. Hansen, 176 Ill. 100 (52 N.E. 17); Butler v. Townsend, 126 N. Y. 105 (26 N.E. 1017); Litts v. Risley Lbr. Co., 224 N. Y. 321 (120 N.E. 730). There was no right to discharge, because, as said, claimant had virtually the status of a drayman."

See also 71 C. J., Workmen's Compensation Acts, sections 167 and 188.

VII. The majority opinion is I think too much influenced by the fact that claimant's decedent had three trucks on this job from time to time. I think this absolutely immaterial. The question is as to the relationship that existed between claimant's decedent and Weaver at the time the former was killed. Claimant's decedent was, at the time he was killed, one of a class of workers on the job who all drove their own trucks and were all subject to the same control. He is not removed from that class by the fact he had from time to time other trucks on the job. We do not need to consider what the status of the drivers of the other trucks he owned would be.

But the majority opinion comments at length as to the status that existed between Weaver and one of the other drivers of Hassebroch's trucks. In Schriver v. J. S. McLaughlin & Sons, 227 Iowa 580, 586, 288 N.W. 657, 661, that very question was involved. There McLaughlin had a paving contract with the Highway Commission which had a similar clause against subletting. A man named Taylor had two trucks on the job, one of which was driven by his brother-in-law, the claimant under Workmen's Compensation. McLaughlin and his insurer alleged claimant was either working for an independent contractor (Taylor) or he was one. In the course of the opinion Justice Miller, speaking for this court, stated: "Before appellants could establish their contention that claimant was an employee of Taylor rather than defendant, it is obvious that it was necessary to establish that Taylor was a subcontractor on the job. As above pointed out, to become a subcontractor, it was necessary that the Highway Commission agree in writing to his status as such. There is no evidence of any such agreement nor was

any attempt made by Taylor or the defendant to establish Taylor as a subcontractor. Taylor, claimant, and claimant's brother, all three applied individually for work, apparently each on the same basis. The commissioner was clearly warranted in holding that Taylor was not a subcontractor on the project."

VIII. I also think it unimportant to consider that on other occasions claimant's decedent would do contract hauling. It is the workman's status at the time of the accident that is controlling. 71 C. J., Workmen's Compensation Acts, section 183. It is quite apparent from reading this and other similar cases that many such truck owners do private hauling between jobs for contractors. This is shown in several of the cases cited under Division X of this dissent.

IX. I have not mentioned the duty to give the act a liberal interpretation, but see earlier quotation from Board of Comrs. of Allen County v. Gable, supra, to the effect that any doubt is to be resolved in favor of claimant. In 71 C. J., Workmen's Compensation Acts, section 183, page 449, the rule is stated:

"In determining whether a workman is an employee or an independent contractor, the act is to be given a liberal construction in his favor, and any doubt is to be resolved in favor of his status as an employee, rather than as an independent contractor * * *."

I do not think the above rule needs to be invoked in this case for I cannot see where the case is close on the issue of Weaver's control over the workmen. It is perfectly apparent Weaver retained full and complete control. Justice Bliss in Garrison v. Gortler, supra, applied this rule of liberal interpretation when deciding an issue as to whether the claimant was within the exception of the casual worker. It will be recalled section 85.61, Code, 1954, gives a broad definition of employee and then exempts the casual workers, independent contractors, and officers. The following quotation from Justice Evans' opinion in Eddington v. Northwestern Bell Tel. Co., 201 Iowa 67, 202 N.W. 374, is set forth in the Garrison opinion, page 549 of 234 Iowa, page 361 of 13 N.W.2d:

"It should always be borne in mind as the polestar of construction of any statute that the *rule* is broader than the *exception*; that the exception is specific, rather than general; and that, therefore, doubts and implications should be solved in favor of the rule, rather than of the exception. The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business. When the relation of employer and employee is established, and when the employee is subjected to the hazards of his employer's trade or business, and suffers injury therefrom while so engaged in the due course of his employment, the excepting proviso of the statute ought not to be enlarged by difficult or doubtful construction, so as to render such an injury noncompensable."

X. Space will not permit a review of cases where, under similar facts, the courts have held against the alleged employer's contention that the claimant was an independent contractor. The following hauling cases where the workman owned his vehicle are almost identical on the facts and in each one the workman was held to be an employee: Van Simaeys v. George R. Cook Co., 201 Mich. 540, 167 N.W. 925; Rouse v. Town of Bird Island, 169 Minn. 367, 211 N.W. 327; Nixon v. Webber-Riley Lbr. Co. 71 Idaho 238, 229 P.2d 997; Showers v. Lund, 123 Neb. 56, 242 N.W. 258; Standish v. Larsen-Merryweather Co., 124 Neb. 197, 245 N.W. 606; Columbia School Supply Co. v. Lewis, 65 Ind. App. 339, 116 N.E. 1. See also Root v. Shadbolt & Middleton, 195 Iowa 1225, 193 N.W. 634, for a case with similar facts, and Schriver v. J. S. McLaughlin & Sons, supra, for another hauling case where the facts are almost identical. Of course the majority could distinguish some of these cases by saying they are cases where the commissioner's award and finding that claimant was an employee was being affirmed. But I have found no workmen's compensation cases where, under similar facts, the truckers were not held to be employees, either by the commissioner or the court.

As good a case as any to select for quotation in the above list, and one that illustrates the holding of all the cited cases on this point, is Standish v. Larsen-Merryweather Co., supra. This is a case where the commissioner and district court denied compensation and the Supreme Court of Nebraska reversed. The

opinion shows the county let a contract to gravel roads, to Larsen-Merryweather Company. The opinion states at page 198 of 124 Neb., page 607 of 245 N.W.: "In performing this work the company used some of its own trucks. It procured the services of several persons owning trucks to do the greater part of the hauling. Plaintiff was one of those persons. * * * It is insisted by appellees that plaintiff was an independent contractor. The fact that there was no agreement for any definite number of loads to be hauled, or for any definite quantity of gravel, or for any definite time that he was to work, and the further fact that the company possessed and exercised the right to stop hauling on account of rainy weather; directed when the work should be resumed, and had the right to terminate the relationship at any time, without liability for damage, we think clearly shows that plaintiff was not an independent contractor."

XI. The workmen's compensation law is basically a branch of social insurance. In all states the employer must insure his liability with a private company, become subscribers to a state fund, or qualify as a self-insurer. It is insurance against a particular hazard of modern life: work injuries that exist in every industry, irrespective of fault. It takes its place with those newcomers to the class of social insurance, such as unemployment and old-age and survivors' insurance, which insure against other hazards to a workman in industry. See the opinion of Justice Bliss in Heiliger v. City of Sheldon, 236 Iowa 146, 153, 18 N.W.2d 182, 186. The basic plan of Workmen's Compensation is a distribution of risk of work injuries throughout the industry, to the end that the whole industry bear at least a portion of the burden and that it not be left to fall harshly upon the disabled worker or his dependent widow or children. Like any such expense of industry it is shifted to the ultimate consumer. It is not, as Justice Weaver pointed out in his dissenting opinion in Norton v. Day Coal Co., any sort of "penalty" on the employer. It is social insurance and the worker who is injured in the battle of industry is entitled to the benefits when a realistic view shows the injury was a hazard insured against. Justice Bliss points this out in the Heiliger case by his quotations from other authorities: " 'Courts look behind the legal terminology to dis-

cover and expose the real relationship between the parties.' "
There, Justice Bliss cited Judge Parker's opinion in United
States v. Vogue, Inc., 4 Cir., Va., 145 F.2d 609, 612, where Judge
Parker said:

"Common-law rules as to distinctions between servants
and independent contractors throw but little light on the ques-
tion involved. The Social Security Act * * * was enacted pur-
suant to a public policy unknown to the common law; and its
applicability is to be judged rather from the purposes that Con-
gress had in mind than from common-law rules worked out in
determining tort liability."

Here is a man who perishes while doing work Weaver con-
tracted to do *with employees*. No question of whether the in-
jury that caused his death arose out of and in the course of his
employment is raised. He leaves a widow and children who are
excluded from the benefits of the insurance on the ground that
he was not an employee. In fairness to the trial court I think it
should be said his opinion indicates he might well have held
otherwise if he thought the question open to him on his review.

I think the majority is clearly wrong in its holding, that
the commissioner's finding claimant's decedent was an independ-
ent contractor on undisputed evidence was binding on the re-
viewing court. I do not think reason or authority will sustain
such a view. And I think the holding of the majority that
claimant's decedent was an independent contractor under the
conceded facts in this case is just as wrong. Few cases will be
found where a workman who can be fired at will is held to be
an independent contractor. I would reverse.

OLIVER and HAYS, JJ., join in this dissent.