**Carol SWAIN, Claimant-Appellee,**

v.

**MONONA COUNTY, Iowa, Employer, Iowa National Mutual Insurance Company, Insurance Carrier, Defendants-Appellants.**

**No. 53196.**

Supreme Court of Iowa.

Jan. 14, 1969.

Smith, Peterson, Beckman, Willson & Peterson, Council Bluffs, for appellants.

John Beardsley, Onawa, for appellee.

STUART, Justice.

This is a workmen's compensation case. Claimant's decedent was found to be an employee by the deputy industrial commissioner's arbitration decision, an independ-

ent contractor by the industrial commissioner's review decision, and an employee by the district court. The sole question on this appeal is whether the district court erred in reversing the decision of the industrial commissioner.

The findings of the industrial commissioner have the same standing as a jury verdict. Musselman v. Central Telephone Company, Iowa, 154 N.W.2d 128, 130. The industrial commissioner's findings of fact are conclusive and binding upon us in the absence of fraud, section 86.29, Code of Iowa; Pribyl v. Standard Electric Co., 246 Iowa 333, 336–337, 67 N.W.2d 438, 441, if there is sufficient evidence to support the findings, Uhe v. Central States Theatre Corp., 258 Iowa 580, 581, 139 N.W.2d 538, 539; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 625, 67 N.W.2d 549, 551.

"Our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make." Musselman v. Central Telephone Company, Iowa, 154 N.W.2d 128, 130; Wagner v. Otis Radio & Electric Company, 254 Iowa 990, 994, 119 N.W.2d 751, 753.

In early summer 1965 Monona County was preparing one of its secondary roads for stabilization of the surface by a private contractor. The county was to do the grading, cutting hills and filling in to change the route of the road and shaping up the shoulders. It became apparent to county supervisor, Roy Swain, the county would need outside help to meet the deadline on its part of the project. The Monona County Board of Supervisors agreed it was desirable and financially possible to obtain additional machinery for the job. Thereafter, acting with authority of the board of supervisors, Swain contacted Dale Barnes, the owner and operator of a caterpillar tractor with dozer and scraper attachments, and his own son, Larry Swain, decedent, who owned a caterpillar tractor and dozer, and asked "if they had time to help us out".

Barnes and Swain took their respective equipment and went to work.

Barnes testified he was working on the same basis as decedent. He testified he had no written contract but Roy Swain told him to go to work whenever he could on the basis of $15 per hour. He kept track of his time, filed a claim and received payment from the county after completion of the project and no social security or income tax was withheld. Barnes stated: "I charged the County the same rate I would charge any other landowner for dirt work and the rate was based upon the type of equipment I furnished. I was working on another job, when Mr. Roy Swain, the Supervisor, contacted me and I had finished that job before I went to work for the County."

Both Barnes and decedent advertised to do soil conservation work in the Soldier paper. Barnes considered the operation of these tractors skilled work. He testified: "No one connected with the County gave me any directions in the operation of my tractor and the dozer and scraper. When I said they had something to do with the manner in which I did the work, it was where the cut was to be made and where the fill was to be made. No control was exercised over my actual operation of the tractor. They didn't tell me how long I was going to work for the County—just wanted some help down there on the hills to cut down. I understood I was only working on this one job and was not to continue working for them indefinitely.

"I did not submit my claim until all of my work was finished. I did not have to ask for anyone's permission when I turned the tractor over to someone else to operate."

"[T]he County didn't care whether I personally operated my tractor, just as long as the tractor was in operation. I carried my own liability insurance on my tractor, paid all of the operating expenses on my tractor, while it was being used on the County job, and the same was true for

Larry Swain. In other words, the County had no expense at all in the use of my tractor, other than the $15.00 an hour and the same would be true for Larry Swain. We both paid the expense of transporting the tractor to and from the job."

Decedent took two or three days off the project and others operated his tractor on the county job during this time.

The foreman in charge of the county road crew cutting hills, stated: "I was there, when Larry Swain first came on the job. We told him what he was to do—where he was to haul dirt and where he was to make his cut and where he was to make his fill. We were cutting down this side of this hill and building up the road with the material taken from the hill and he was told where to take the dirt from and where to put it. There were County machines doing the same work and all he had to do was fall in line and this work continued under about those same circumstances during the period up until his death—it was just cutting and grading the dirt over to build up the road. I told him what he was to do."

On July 1, 1965, Larry Swain, claimant's decedent, was operating his own tractor hauling dirt in the county scraper twenty-five feet from a bank which fell in covering and killing him. Carol Swain, decedent's widow, is the claimant in this proceeding.

■ The most important or principal element in defining an independent contractor in Iowa is that he is free to determine for himself the manner in which the specified result should be accomplished. Nelson v. Cities Service Oil Company, 259 Iowa 1209, 1215–1216, 146 N.W.2d 261, 265; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 628, 67 N.W.2d 549, 553; Taylor v. Horning, 240 Iowa 888, 891, 38 N.W.2d 105, 107.

■ "An independent contractor under the quite universal rule may be defined as one who carries on an independent business and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent or each in itself controlling: (1) The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer." Nelson v. Cities Service Oil Company, 259 Iowa 1209, 1215, 146 N.W.2d 261, 264–265; Mallinger v. Webster City Oil Co., 211 Iowa 847, 851, 234 N.W. 254, 256–257.

■■ The deceased had a business of his own. While this fact does not determine his relationship to the county, it is a factor to be considered. The control exercised over deceased by the foreman was general and was directed to the results of his work. The county's interest was primarily in the equipment as indicated by the method of pay ($15 per hour for equipment and operator) and the fact that the deceased had the right to hire someone else to operate his tractor and did so. It was deceased's obligation to get his equipment to and from the job, pay all maintenance charges and keep the machinery in working order. Deceased was paid on the basis of a claim filed and no deductions were made for income tax or social security. All of these factors support the findings of the industrial commissioner. That is the extent of the review permitted the courts under cases cited at the beginning of this opinion.

The trial court criticized the form of the decision of the industrial commissioner.

We believe his factual determinations and statement of the law are set out quite adequately. Although the form could have been improved, we had no difficulty in understanding his decision.

For the reasons stated, the trial court is reversed and the decision of the industrial commissioner reinstated.

Reversed.

All Justices concur, except RAWLINGS, J., who takes no part.